Victoria Giampa
1848 Wellington C
Henderson, NV 89014
(702) 434-9027
superjanedoe@yahoo.com
*In Pro Se*



FILED ____ RECEIVED
____ ENTERED ____ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 2 8 2017

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| VICTORIA GIAMPA,<br><br>    Plaintiff,<br><br>    vs.<br><br>MIDFIRST BANK; FANNIE MAE, FANNIE MAE AS TRUSTEE FOR SECURITIZED TRUST, FANNIE MAE REMIC PASS-THROUGH CERTIFICATES 2006-123 TRUST; COUNTRYWIDE SERVICING CORP., BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, LP; RECONTRUST COMPANY, N.A.; GREEN TREE SERVICING, LLC; DITECH FINANCIAL, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ("MERS"); NATIONAL DEFAULT SERVICING CORPORATION; AND DOES 1 THROUGH 100 INCLUSIVE, *et al.*<br><br>    Defendants. | **2:17-cv-01208-MMD-CWH**<br><br>**VERIFIED COMPLAINT** |

# COMPLAINT FOR DAMAGES AND OTHER RELIEF

## PRELIMINARY STATEMENT

Since 2009 the United States has been in a foreclosure crisis.   In late 2009, one in eight U.S. mortgages was in foreclosure or default, and 2.8 million homeowners received foreclosure notices in 2009.   Plaintiff's home is being wrongfully foreclosed upon, and this court has heard repeatedly from many struggling homeowners in the State of Nevada proclaiming the same lament.

This complaint arises out of a dispute between Plaintiff and Defendants that began in and around 2009, when one or more Defendants created an unlawful escrow account and started collecting escrow funds against Plaintiff's mortgage in part to fund the payment of improper sums billed and paid to Bank of America.   Plaintiff had been separately paying the property taxes and insurance on the subject property from 1999.  Plaintiff informed Defendants that the creation of this escrow account was the start of all the harm that Plaintiff complains of now.  Plaintiff has paid and continued to pay her mortgage as agreed.  All amounts actually owed by plaintiff had been fully and legally tendered but for Defendants' later taking charge of paying escrow fees.  Plaintiff objected to the illegal opening of the escrow account and demanded that the mortgage account have its escrow account removed immediately and Plaintiff's home loan be placed back in the state that it was in prior to this escrow account being established.  Plaintiff sent Defendants a copy of the insurance policy so defendants could see exactly what was or was not covered and other details of it.  Plaintiff offered a full tender of the amounts owed on the mortgage just as soon as she received a copy of the policy she was being asked to pay for under the terms of the Deed of Trust.  No copy has ever been furnished to plaintiff other than a Notice sent on October 15, 2009, where BAC purchased insurance on Plaintiff's property for the insurance premium amount of $1,321.00, **(Exhibit 1).**  Defendants

ignored Plaintiff's requests and did not respond, even after it was repeatedly requested. Instead, Defendants created an improper and involuntary escrow account, refused to simply let Plaintiff pay the mortgage and the insurance as she had been for years, and demanded an increase in Plaintiff's monthly payments. Based on information and belief, Defendants knew of Plaintiff's request for a copy of the required escrow account analysis before Defendants created the escrow account, and yet participated in overcharging Plaintiff for insurance, along with collecting excessive and unnecessary fees for taxes and insurance and/or in the alternative, never placing the insurance that plaintiff was billed for on the subject property resulting in more debt than Plaintiff could afford to pay knowing Plaintiff was in a very vulnerable position in regards to the subject property. Defendants used this information in part to improperly take advantage of Plaintiff in an anti-competitive and detrimental way and overcharged her for excessive or unneeded costs and fees for taxes and insurance in violation of the State of Nevada laws in order to improperly extort fees and costs out of Plaintiff on several occasions, and later by initiating an improper acceleration and foreclosure on the subject property. Sometime thereafter, Defendants refused to accept Plaintiff's tendered payment and after having repeatedly misapplied her prior monthly payments and Defendants making no meaningful efforts to settle this dispute, all the while knowing that the balance in that dispute account continues to build, Defendants blindly allege a payment default and initiated improper accelerations and now seek the expensive and drastic foreclosure option so they, their agents, subsidiaries, affiliated companies, and co-conspirators may collect and extort improper additional attorney fees, unnecessary and inflated fees and/or costs, and expenses under their interstate scheme to seize Plaintiff's money; and later after an arbitration, by initiating an

improper foreclosure again on the subject property without responding to Plaintiff's RESPA requests, and received no timely responses to any of them.

Back in 2009 and 2010, while the parties engaged in substantial dialogue regarding the issue of taxes and insurance, Bank of America asked Plaintiff if she was interested in receiving an offer for a loan modification through the federal Home Affordable Modification Program. Unfortunately, instead of fulfilling their promises in providing a HAMP loan to Plaintiff under the Home Affordable Mortgage Program, pursuant to the Making Home Affordable Program Handbook, and the promise that Plaintiff will not lose her home to a foreclosure while the loan is being considered for a modification, Defendants, who had no right to foreclose upon her, have engaged in a fraudulent and deceitful scheme constituting unfair business practices in order to increase its own profits by failing to close the mortgage transaction for the past approximately nine years.

Plaintiff has recently received the notice of default and notice of sale again from National Default Servicing with knowingly false and misleading representations of the total debt owed by Plaintiff. These numbers contain fees, costs, and charges for which Bank of America admits in writing that it overcharged Plaintiff and paid back monies to Plaintiff for which Defendants were not entitled to lawfully or contractually bill and collect from Plaintiff, known to be in error, and were long in dispute, i.e. escrow issues and late charges stemming from 2009. On December 29, 2009, Bank of America sent Plaintiff a letter stating that "The lender-placed insurance coverage that was purchased by BAC Home Loans Servicing, LP at your expense, has been cancelled with no charge to you." **(Exhibit 2).** Clearly, Defendants violated RESPA Reg. X, 3500.17(f)(2)(i), by not properly returning Plaintiff's excess funds in the disputed escrow account within 30 days as required by RESPA, not counting the violation

4

in even collecting such sums in the first place.  Defendants have delayed or not responded to Plaintiff's RESPA's requests and their actions may have been designed to run any statute of limitations that would apply to Plaintiff's RESPA claims.

Defendants' acts and omissions have been with deliberate indifference, oppression and fraud, and have proximately caused Plaintiff actual damages, including but not limited to severe emotional distress, loss of sleep, frustration, fear, anxiety, direct monetary loss and irreparable injury that continues to this very day.

Based on information and belief, Plaintiff contends that the imminent foreclosure is invalid because National Default Servicing had been issued a Certificate of Non-Foreclosure by an arbitrator in a prior State of Nevada Foreclosure mediation hearing on March 31, 2016, **(Exhibit 3).**   The previous foreclosure and the imminent foreclosure is invalid because National Default did not and does not have the authority to legally convey the property as Trustee in the Trustee's Deed Upon Sale in violation of NRS 107.086.  Defendants' failure to bring the necessary documentation to the arbitration hearing in March 2016, violated Nevada Revised Statute 107.086(2)(a)(3) (requiring a trustee to send with every Notice of Default a form where the homeowner "may indicate an election to enter into mediation").   But for National Default Servicing frustrating Plaintiff's right to a fair and equitable arbitration hearing, Plaintiff might have been afforded a fair and equitable hearing and a modification of a loan. Courts have held that participating in good faith in the mediation hearing is a prerequisite to moving forward with the foreclosure.  NRS 107.086(2)(c)(2) (requiring a certification under NRS 107.086(7), which requires the parties act in "good faith").

On August 30, 2011, the State of Nevada, Attorney General's Office, filed a Deceptive Trade Practices action against Countrywide [and Bank of America], and alleged that they

5

engaged in a broad range of deceptive practices to sell and service mortgage loans to Nevada consumers. The public needs to be aware of what the Attorney General allege in its complaint which plainly show a similar pattern and practice of deceit by Countrywide and Bank of America in Plaintiff's case, who were found by the Attorney General's office to have engaged in deceptive trade practices which poses a continuing threat to the public. **(Exhibit** 4)

## JURISDICTION

1.      This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

2.      This Court has jurisdiction pursuant to RICO, 18 U.S.C. § 1964(a) & (c), 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4.      Plaintiff Victoria Giampa is now, and at all times relevant to this action, a resident of the County of Clark, State of Nevada.

5.      At all times relevant to this action, Plaintiff owned and has superior claim to the Real Property (the "Home") located at 1848 Wellington Ct., Henderson, NV 89014.

6.      Defendant Bank of America Corporation is a foreign corporation that is incorporated in Delaware, with its principal place of business located in Charlotte, North Carolina. At all times material to this complaint, Bank of America Corporation was doing business in the State of Nevada. Bank of America Corporation is the parent

corporation of Bank of America, N.A. and a successor in interest to Countrywide Financial.

7.      Defendant Bank of America, N.A. is a national bank with its principal place of business located in Charlotte, North Carolina.  At all times material to this complaint, Bank of America, N.A. was doing business in the State of Nevada.  Bank of America, N.A. is the parent of BAC Home Loans and ReconTrust.

8.      Defendant BAC Home Loans services loans and is a subsidiary of Bank of America with its principal place of business in the State of Texas.  On July 1, 2-11 BAC Home Loans Servicing was merged into Bank of America, N.A.  At all times relevant to this complaint, BAC Home Loans was doing business in the State of Nevada.

9.      Defendant ReconTrust is a wholly-owned subsidiary of Bank of America, N.A. that services mortgages.  At all times material to this complaint, ReconTrust's principal place of business was located in California and ReconTrust was doing business in the State of Nevada.

10.      Defendant Green Tree Servicing was and is a foreign limited liability company licensed to do business in the State of Nevada and County of Clark.

11.      Defendant Ditech Financial LLC, "Debt Collector" is a limited liability corporation formed under the laws of South Dakota.  Ditech is a debt collector as that term is defined under 15 U.S.C. § 1692a(6) and has violated the statute using unfair or unconscionable means to collect or attempt to collect a debt.

12.      On July 1, 2008, Bank of America completed its purchase of Countrywide in an all-stock transaction that Bank of America has described as a

7

merger. Former Countrywide shareholders were compensated with shares of a Bank of America subsidiary that was created solely for the transaction.

13.     Since Countrywide's acquisition, Bank of America has taken over servicing loans previously serviced by Countrywide, along with its own servicing portfolio. Former Countrywide customers now use Bank of America customer service resources, including Bank of America service centers and website. Former Countrywide customers receive mortgage statements from Bank of America, make their mortgage payments to Bank of America, and apply to Bank of America if they wish to modify their mortgages. The combined mortgage lending operations of Bank of America and Countrywide, including Countrywide's branch network and origination platform, now operate under the name Bank of America Home Loans. The servicing operations of Bank of America and Countrywide merged into BAC Home Loans Servicing, LP.

14.     As part of the merger, Bank of America assumed Countrywide's liabilities. Bank of America agreed on Countrywide's behalf to modify certain Countrywide home loans as a part of an $8.4 billion consumer fraud settlement with state attorneys general.

15.     In November 2008, Countrywide's assets were transferred to Bank of America. Countrywide has stopped independently filing financial statements. Instead, Countrywide's assets and liabilities are reported on Bank of America's financial statements.

16.     Defendant MidFirst Bank is a National Banking Association, a Non-Depository Payor Bank, a corporation, doing business in the County of Clark, State of

Nevada. Plaintiff is further informed and believes, and thereon alleges, that MidFirst Bank is the account debtor of the instant matter in a capacity of accommodated party in interest to a 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, hereinafter more particularly described in this Complaint.

17.     Defendant Fannie Mae is a corporation, doing business in the County of Clark, State of Nevada. Defendant is the "Sponsor/Seller" for bankruptcy remote Special Purpose Vehicle FNMA 2006-123 Trust. Plaintiff is further informed and believes, and thereon alleges that Defendant Fannie Mae was acting in the capacity of a qualified intermediary for credit swap conveyances associated to the 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

18.     Defendant Depositor is an as-of-yet unidentified corporation doing business in the County of Clark, State of Nevada. Defendant is the purported "Depositor" for bankruptcy remote Special Purpose Vehicle FNMA 2006-123 Trust. Plaintiff is further informed and believes, and thereon alleges that Defendant Depositor was acting in the capacity of a qualified intermediary for credit swap conveyances associated to the 26 U.S. Code § 1031 – Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

19.     Defendant, Fannie Mae, acting in the capacity of Trustee for the bankruptcy remote Special Purpose Vehicle Fannie Mae REMIC Pass-Through Certificates 2006-123 (herein referred to as "FNMA 2006-123 Trust" is a National Banking Association, doing business in the County of Clark, State of Nevada. Plaintiff

9

is informed and believes, and thereon alleges that Defendant Fannie Mae acting in the capacity as Junior Secured Party to MidFirst Bank in the special purpose vehicle (SPV) transaction scheme is offering securities to the secondary market for the purpose of obtaining certificate holder's acquired funds by Special Deposit to execute a 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

20.     Defendant, Mortgage Electronic Registration Services, Inc., aka MERS ("MERS"), is a corporation duly organized and existing under the laws of Nevada, doing business in the County of Clark, State of Nevada.  Plaintiff is informed and believes, and thereon alleges that MERS was acting in the capacity of electronic agent as a purported Nominee/Beneficiary for MidFirst Bank under the Deed; subsequently acting in a capacity of bailor/bailee for each successor defendant of bankruptcy remote Special Purpose Vehicle FNMA 2006-123 Trust associated to the 26 U.S. Code § 1031– Exchange of property held for productive use or investment warehouse line of credit, more particularly described in this Complaint.

21.     Defendant National Default Servicing Corporation is registered jin Nevada as a foreign corporation stating in its filed Certificate of Existence that it is an Arizona corporation.

22.     At all times relevant to this transaction, Plaintiff Victoria Giampa was and is a Consumer within the meaning of 15 U.S.C. § 1692a(3).

23.     At all times relevant to this transaction Defendants Countrywide, Bank of America, BAC, Green Tree Servicing, Ditech, National Default Servicing was and

are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6), as it regularly collects or attempts to collect debts owed or due another.

24.   At all times relevant to this transaction. Defendants are and were persons as defined under RICO in 18 U.S.C. § 1961(3).

25.   Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained through discovery.  Plaintiff is informed and believes, and therefore alleges that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

26.   Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## GENERAL ALLEGATIONS

27.   This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

28.     Plaintiff homeowner disputes Defendants' superior colorable claim to legal title and equitable title of the Prime Market Real Property in question (hereinafter, the "Real Property"), which is the subject of this instant action, inasmuch as Plaintiff specifically pledged the Real Property collateral evidenced by the Grant Deed and further clarified under the Deed of Trust as Real Property to the Accommodated Non Depository Payor Bank, MidFirst Bank (hereinafter, Accommodated  Party) as Accommodation Party in the 26 U.S. Code §1031 – Exchange of property held for productive use or investment (hereinafter, the "§1031 – Exchange").  Plaintiff is informed and believes, and thereon alleges that the Defendant FNMA 2006-123 as a Junior Secured Party to MidFirst Bank in the §1031 – Exchange is attempting to make an unlawful claim to legal title through a fraudulent assignment of enforcement rights of the currently un-perfected underlying Deed of Trust and unlawful equitable claim of ownership to Plaintiff's Real Property through the MidFirst Bank hypothecated collateral purportedly after acquired "proceeds" of the Real Property through the Deed of Trust lien encumbering Plaintiff's Real Property, which is being unlawfully construed as the Intangible Payment Obligation Transferable Record Chattel Paper (hereinafter, the "Payment *Intangible*"), the underlying *intangible* collateral to the Tangible Note for Accommodation or Bill of Exchange (hereinafter, Tangible "Note"), **(Exhibit 5) and** Deed of Trust, **(Exhibit 6)**.

29.     From 1998 until the financial crash of 2008-2009, over 60 million purported consumer credit mortgage loan transactions were purportedly sold by Non-Depository Payor Banks into Special Purpose Vehicles, (hereinafter "SPV") "REMIC Trusts," "pools of loans," that are empty, devoid of any "mortgages" that are taken

12

against phony "Mortgage-Backed-Securities," that have no "mortgages" in them via

26 U.S. Code §1031 – Exchange of property held for productive use or investment

(hereinafter, the "§1031 – Exchange").  Plaintiff's purported home loan was one of

the 60 million scheduled for exchange.   PSA for FNMA 2006-123

http://www.fanniemae.com/syndicated/documents/mbs/remicsupp/2006-123.pdf.

     30.    Plaintiff is informed and believes, and thereon alleges that a §1031 –

Exchange is the mechanical transactional scheme whereby a purported Tangible Note

is converted/exchanged for a Payment Intangible asset to provide an alternative

investment offering via Special Deposit to certificate or bond holders which were

expected to be relatively safe; which, were offered by Wall Street Firms to the

secondary market through purported mortgage backed securities.

OCC Asset Securitization Manual 1997, Pg.23.



13

31.     Plaintiff is informed and believes, and thereon alleges that certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter, REMIC) Tax Reform Act of 1986 were to be observed, whereby the Non-Depository Payor Banks and Issuing Entities REMIC would be protected from either entity going into bankruptcy. To achieve the desired "bankruptcy remoteness," purported numerous "True Sales" of Plaintiff's Tangible Note would have had to have occurred by operation of all applicable laws.

32.     Plaintiff is further informed and believes, and thereon alleges that there was no "True Sale" of Plaintiff's Tangible Note, a circumstance whereby MidFirst Bank sold Plaintiff's Tangible Note to the "buyer/seller" Fannie Mae in the ordinary course of business by offer, acceptance, delivery and consideration given for full value of the entire instrument pursuant to the Real Estate and the Tax Reform Act of 1986.

33.     The Accommodated Non-Depository Payor Bank (hereinafter, Accommodated Party) MidFirst Bank, purports to have negotiated in accordance with all applicable laws the Tangible Note obligation in the ordinary course of business to successor defendant Fannie Mae.  Likewise, Plaintiff is informed and believes, and thereon alleges that MidFirst Bank has unlawfully assigned, transferred, or conveyed account debtor capacity as Accommodated  Party to Fannie Mae, successor and successor defendants, in consideration for a service release premium received for Accommodated Party services rendered for originating the §1031 – Exchange on or before closing date of FNMA 2006-123 Trust.  Plaintiff is informed and believes, and thereon alleges that MidFirst Bank never negotiated the Tangible Note - by operation of law for full value in accordance with all applicable laws - to Fannie Mae.

14

34.     The Accommodated Party MidFirst Bank, purports to have assigned/transferred a beneficial security interest over Plaintiff's Real Property evidenced by MidFirst Bank's recorded Deed of Trust lien in the ordinary course of business to successor defendants of the §1031 – Exchange. Plaintiff is informed and believes, and thereon alleges that MidFirst Bank never negotiated the Tangible Note Bill of Exchange for full value in accordance with all applicable laws.   Plaintiff is further informed and believes, and thereon alleges, that at best, MidFirst Bank delivered  a converted (statutory conversion) an unsecured Tangible Note as "order paper" to Fannie Mae for settlement for Accommodated Party services rendered associated with originating the exchange transaction, not in the ordinary course of business, and therefore, could not negotiate, assign, nor transfer the underlying security intangible beneficial security interest enforcement right over the power of sale covenant in the MidFirst Bank's currently un-perfected Deed of Trust lien encumbering Plaintiff's Real Property.   "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder *must be* in possession of the instrument." *See* UCC  § 1-201 (20) and comments.

35.     As part of the transaction scheme of 26 U.S. Code §1031 – Exchange, Defendants deployed MERS as an electronic agent under the Constructive Deed of Trust as nominee/beneficiary for each successor Defendant as bailor/bailee to streamline a purportedly hypothecated security interest - "Secret Liens" - over the Payment Intangible after acquiring collateral, unlawfully construed as "Proceeds" of Plaintiff's Real Property.   Plaintiff is informed and believes, and thereon alleges that

15

MERS only tracks and updates ownership of the Payment Intangible registered with the MERS' database software system. MERS cannot transfer the beneficial right to the Tangible Accommodated Note instrument. A legitimate "True Sale" of a Tangible Note instrument can only be transferred in the ordinary course of business by proper negotiation for full value, transfer and delivery by operation of all applicable laws. pursuant to the MERS Procedural Manual and MERS Patent.

36.     Plaintiff is further informed and believes and thereon alleges that payment for full value of the entire instrument in the ordinary course of business to MidFirst Bank from Fannie Mae of the Tangible Note for Accommodation at or before its maturity date destroys the Tangible Note's negotiability; thus, no documents or records can be produced that demonstrate that prior to the December 28, 2006 closing date for FNMA 2006-123 Trust, the Tangible Note was duly indorsed, transferred and delivered to FNMA 2006-123 Trust in the ordinary course of business by operation of all applicable laws, including all intervening transfers and any purported transfers in the personal property Payment Intangible. Nor can any documents or records be produced that demonstrate that prior to the December 28, 2006, the Deed of Trust was duly assigned, transferred and delivered to FNMA 2006-123 Trust, via the Custodian of Records, Fannie Mae, including all Secret Liens purportedly securing the Payment Intangible intervening transfers/assignments.

37.     Plaintiff further alleges that any documents, i.e. MERS' Assignment of the Deed of Trust, that purports to transfer a hypothecated beneficial security interest over the Payment Intangible underlying collateral of the Tangible Note or Bill of Exchange to FNMA 2006-123 Trust after the Closing Date December 28, 2006 are

void as a matter of law.  No security interest in the Real Property was perfected in the name of any of the successor defendants to the §1031 - Exchange.  The alleged holder of the Tangible Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of Plaintiff's Deed of Trust, MERS, does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest as agent or nominee to any action taken or to be taken against the Real Property by successor Defendants to the §1031 – Exchange.  PSA Section 2.01 Conveyance of Mortgage Loans.  Plaintiff is also informed and believes and thereon alleges that at all times herein mentioned, any assignment of a Deed of Trust without proper transfer in the ordinary course of business of the Tangible Note that it secures is a legal nullity by operation of law.   Plaintiff is informed, believes and thereon alleges that the FNMA 2006-123 Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of SPV investment in mortgage-backed securities as described in the Prospectus identified herein below.  A detailed description of the purported mortgage loans which form the FNMA 2006-123 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC.  FNMA 2006-123 Form 10k.

http://www.fanniemae.com/syndicated/documents/mbs/remicsupp/2006-123.pdf

38.    Plaintiff alleges that Defendants, and each of them, cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Deed of Trust, resulting in imperfect security interests and claims; therefore, none of the Defendants has perfected any colorable claim of title or security interest in Plaintiff's Real Property.  Defendants, and each of them, cannot establish

17

that the Deed of Trust, purportedly securing the Tangible Note, was legally or properly acquired in accordance with all applicable laws. Plaintiff, therefore alleges, upon information and belief, that none of the parties to the §1031 – Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim to Plaintiff's real property; and that all Defendants are equitably estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

39.     Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of the rights, obligations and interest of the parties with regard to the property and the current validity of the corresponding Tangible Note and Mortgage/Deed of Trust.

40.     Plaintiff requests a determination whether any Defendant has authority to foreclose on the real property.

41.     Plaintiff requests that the Court declare and adjudge that Plaintiff is entitled to the exclusive possession of the property.

42.     Plaintiff requests that the Court declare and adjudge that Plaintiff owns the real property in fee simple and is entitled to the quiet and peaceful possession of the real property.

43.     Plaintiff requests that the Court declare and adjudge that Defendants, and all persons claiming under her, have no estate, right, title, lien or interest in or to any part of the real property.

44.     Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based

18

upon:

    a. An invalid and unperfected security interest in Plaintiff's Real Property hereinafter described;

    b. Void "True Sales;" and,

    c. An incomplete and ineffectual perfection of a security interest in Plaintiff's Real property.

## FACTUAL ALLEGATIONS

45.    Plaintiff had a Forensic Chain of Title Securitization Analysis completed by a qualified expert to verify the claims of this complaint and Affidavit of Michael Carrigan, **(Exhibit 7).**

46.    Plaintiff is the Superior Recorded owner of the Real Property, Deed of Trust, *(see* **Exhibit 6**).

47.    Plaintiff was issued an uncertificated security to execute in the capacity of (Accommodation Party) to a Tangible Note Bill of Exchange on November 6, 2006 regarding a purported loan to (Accommodated Party) MidFirst Bank for $358,500.00, *(see* **Exhibit 5).**

48.    Defendant MidFirst Bank is an account debtor Accommodated Party to a 26 U.S. Code § 1031 – Exchange of property held for productive use or investment.

49.    Plaintiff herein alleges that the signatures on the Tangible Note Bill of Exchange instrument as the Accommodation party constitutes a statutory capacity as surety for the non-depository payor bank, the original accommodated secured party of record, acting as Trustee/Account Debtor pursuant to a Special Deposit 26 U.S. Code §1031 – Exchange of property held for productive use or investment.

50.     On November 20, 2006, Plaintiff pledged a Constructive Deed of Trust granting Legal Title to Accommodated MidFirst Bank to file against Plaintiff's Superior Claim to Title filed in the Official Records of the Clark County Recorder's Office as ins# 2006.1120.0614, Deed of Trust, (*see* **Exhibit 6**).

51.     The purported mortgage loan contracts between the parties are specific as to the duties of each party.

52.     On November 22, 2006, MidFirst Bank sent a letter (**Exhibit 8** ) to Plaintiff notifying Plaintiff:

> The loan on the above property has been sold to Countrywide Home Loans, Inc.  The new Mortgagee clause needs to read:
>
> Countrywide Home Loans, Inc.
> And/or its assigns as their interest may appear (ATIMA)
> PO Box 961206, FTWX-22
> Ft Worth TX  76161
>
> The servicing has been transferred to Countrywide Home Loans, Inc.  Please send all correspondence to:
>
> Countrywide Home Loan, Inc.
> Attn: Insurance Department, M/S SV22
> PO Box 10212
> Van Nuys CA   91410-0212

53.     On December 5, 2006, MidFirst Bank sent a letter (**Exhibit 9** ) to Plaintiff notifying Plaintiff that "…the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from MidFirst Bank to Countrywide, effective 01/01/07.

54.     On January 18, 2007, an Assignment of Deed of Trust was executed by Natalie D. Jones on behalf of MidFirst Bank, purporting to transfer all right, title and interest in Plaintiff's Deed of Trust to MERS, (*see* **Exhibit 7**).

55.     Natalie D. Jones failed to disclose her true employment with Assignee.

56.     The January 18, 2007 Assignment was notarized by Matthew J. Petersen, (*see* **Exhibit 7**).

57.     MERS is a registration entity that does not hold loans per its operating rules.

58.     The January 18, 2007 Assignment occurred approximately one year after the Closing Date of the Trust and is in violation of the Trust's Agreement and is therefore, void.

59.     On or about September 11, 2008, Countrywide began to service Plaintiff's loan and sent Plaintiff information on how to apply for refinancing.

60.     On or about July 1, 2009, BAC started servicing Plaintiff's loan.

61.     On August 13, 2009, BAC sent a letter to Plaintiff:

Thank you for your recent payment to BAC Home Loans Servicing, LP, your home loan servicer.  However, your loan payment for the current month has not been received.  As of August 13, 2009, the total due on your loan is **$2,648.63**, which includes the payment due on August 01, 2009.

62.     On August 2, 2009, BAC sent Plaintiff "Notice" –

We recently discovered we do not have a copy of your hazard (homeowner's) insurance information for the above-referenced property…If proof of acceptable coverage is not received within 30 days of the date of this notice, BAC Home Loans will purchase Lender-Placed Hazard (homeowner's) insurance at your expense and charge you for the cost of the insurance.  The approximate cost of the Lender-Placed Insurance will be $1,321.00, if purchased by BAC Home Loans.  This estimate is based upon our knowledge that the location above is Owner Occupied and a 21-35 year old home….Additionally, if the occupancy of your property changes, the premium charged may differ from the amount stated in this letter.  The coverage period will be effective from 08/10/2009 until 08/10/2010….

If we purchase Lender-Placed Insurance, the cost of that coverage will be charged to you and may become an additional debt secured by your mortgage

21

or deed of trust. If you have an escrow account, the annual cost for this insurance will be paid from it. If you do not have an escrow account, BAC Home Loans may establish one and charge the cost of the Lender-Placed Insurance to it. Charging the annual cost for this insurance to your escrow account will likely cause your monthly payment to increase.

Additional items to consider include:
This insurance will provide less coverage than was previously in effect and it may duplicate existing coverage.
This insurance may be more expensive than your previous coverage.
If purchased, the coverage amount for Lender-Placed Insurance will be based on the replacement value, which we believe is the last known amount of coverage you purchased, and if we do not have that information, it will be your current principal balance. If purchased, it is estimated that your hazard coverage amount would be $330,300.00.
This insurance provides no coverage for: loss or damage to personal property (such as personal contents of your home) loss from theft, injury to persons or property for which you may be liable, additional living expenses, or flood. Lender-Placed Insurance does not provide guaranteed replacement cost coverage.
The insurance may not be sufficient to fully restore or repair your property to its previous condition, and may **not** protect any equity that you may have built up on your property.
This insurance may have other restrictions, exclusions and limitations specifically described in the coverage that we acquire.
In the event of a claim, all payments will be due to BAC Home Loans except amounts in excess of BAC Home Loans' interest which will be forwarded to you.

63.     On September 7, 2009, BAC sent another letter to Plaintiff:

If proof of acceptable coverage is not received by 10/12/2009, BAC Home Loans will purchase Lender-Placed Hazard (homeowner's) insurance at your expense and charge you for the cost of the insurance....

64.     On October 14, 2009, BAC sent a letter to Plaintiff:

Thank you for your recent payment to BAC Home Loans Servicing, LP, your home loan servicer. However, your loan payment for the current month has not been received. As of October 14, 2009, the total due on your loan is **$2,887.15**, which includes the payment due on October 01, 2009.

65.     On October 15, 2009, BAC sent notice to Plaintiff:

**NOTICE OF LENDER-PLACED INSURANCE**

22

NAMED INSURED:
BAC HOME LOANS SERVICING, LP
P.O.BOX 961206
FORT WORTH, TX 76161-0206

PREMIUM:
$1,321.00

66.    On November 16, 2009, BAC sent notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 10/01/2009 | $4,770.22 |
| Late Charges: | 10/01/2009 | 119.26 |
| Other Charges: | Total Late Charges | 477.04 |
| | Uncollected Costs | 25.00 |
| | Partial Payment Balance | 0.00 |
| | TOTAL DUE: | $5,391.52 |

67.    On November 27, 2009, BAC sent Plaintiff notice:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 10/01/2009 | $4,770.22 |
| Late Charges: | 10/01/2009 | 238.52 |
| Other Charges: | Total Late Charges | 477.04 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | 0.00 |
| | TOTAL DUE: | $5,535.78 |

68.    On December 18, 2009, BAC sent Plaintiff a letter explaining Plaintiff may be eligible for a HAMP loan and asking Plaintiff to call Bank of America for eligibility.  Plaintiff called Bank of America and she was informed that she need not make payments to be eligible for modification.

69.    On December 23, 2009, BAC sent a letter (*see* **Exhibit 2**) to Plaintiff:

We have updated our records with the insurance policy information that was provided.  The lender-placed insurance coverage that was purchased by BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. at your expense, **has been cancelled with no charge to you.**

23

70.     On December 31, 2009, Bank of America sent a notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 11/01/2009 | $4,770.22 |
|---|---|---|
| | | |
| Late Charges: | 11/01/2009 | 238.52 |
| Other Charges: | Total Late Charges | 596.30 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | 0.00 |
| | TOTAL DUE: | $5,655.04 |

71.     On January 29, 2010, Bank of America sent a notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 12/01/2009 | $5,320.48 |
|---|---|---|
| | 01/01/2010 | 2,660.24 |
| Late Charges: | 12/01/2009 | 238.52 |
| Other Charges: | Total Late Charges | 715.56 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | 0.00 |
| | TOTAL DUE: | $6,049.43 |

72.     On August 16, 2010, Bank of America sent notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 07/01/2010 | $5,320.48 |
|---|---|---|
| | | |
| Late Charges: | 12/01/2009 | 119.26 |
| Other Charges: | Total Late Charges | 784.06 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | (2,385.11) |
| | TOTAL DUE: | $3,888.69 |

73.     On September 16, 2010, Bank of America sent notice to Plaintiff:

NOTICE OF INTENT TO ACCELERATE

| Monthly Charges: | 0/01/2010 | $5,320.48 |
|---|---|---|

24

| Late Charges: | 08/01/2010 | 119.26 |
| Other Charges: | Total Late Charges | 0.00 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | (381.27) |
| | TOTAL DUE: | $5,108.47 |

74.    On October 18, 2010, Bank of America sent a letter to Plaintiff:

A mortgage is considered in default status when payments are not made by the scheduled due date, a payment is missed, or if the terms of the loan are not met.  When the default occurs, the accounts is subject to fees, including fees assessed for services ordered to protect the note holder's interests in the property and rights under the loan documents (the "Default Related Services").
**We may have assessed or may assess fees to your loan account for Default Related Services**....The fee schedule contains a complete list of the Default Related Services for which you may be charged however, it does not include a complete list of all fees or charges that could be assessed on your loan account.

75.    On October 18, 2010, Bank of America sent notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 09/01/2010 | $5,320.48 |

| Late Charges: | 09/01/2010 | 238.52 |
| Other Charges: | Total Late Charges | 13.12 |
| | Uncollected Costs | 50.00 |
| | Partial Payment Balance | (2,385.11) |
| | TOTAL DUE: | $3,327.01 |

76.    On November 17, 2010, Bank of America sent notice to Plaintiff:

**NOTICE OF INTENT TO ACCELERATE**

| Monthly Charges: | 10/01/2010 | $2,660.24 |
| | 11/01/2010 | 2,451.94 |
| Late Charges: | 10/01/2010 | 119.26 |
| Other Charges: | Total Late Charges | 0.00 |
| | Uncollected Costs | 65.00 |
| | Partial Payment Balance | (1,977.6) |

TOTAL DUE:          $3,318.84

77.    On December 27, 2010, a Notice of Default was filed with the Clark County

Recorder's Office as ins#2010.1227.0810.

78.    On December 27, 2010, ReconTrust Company, N.A. sent Plaintiff an Important Legal

Notice (**Exhibit 10**):

> ReconTrust Company, N.A., acting in its capacity as agent for the beneficiary, is required by law to advise you of the following:
> RECONTRUST COMPANY, N.A. is attempting to collect a debt and any information it obtains will be used for that purpose.

> The name of the Creditor to whom the debt is owed: BAC Home Loans Servicing, LP. As of the date of this letter, you owe $349,720.60. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check in which event we will inform you before depositing the check for collection.

79.    On December 29, 2010, a Corporation Assignment of Deed of Trust

was filed with the Clark County Recorder's Office as ins#2010.1229.3426.

80.    The December 29, 2010 Corporation Assignment purports to assign all

right, title and interest in Plaintiff's Deed of Trust to BAC Home Loans Servicing,

LP, f/k/a Countrywide Home Loans Servicing, LP.

81.    The December 29, 2010 Corporation Assignment was executed by

Jorge Valadez for MERS, without disclosure of his employment with Assignee, (*see*

**Exhibit 7**).

82.    The December 29, 2010 Corporation Assignment was notarized by

Kamra Walker, (*see* **Exhibit 7**).

26

83. The December 29, 2010 Assignment occurred approximately four years after the Closing Date of the Trust and is in violation of the Trust Agreement, and therefore, void.

84. On December 31, 2010, Bank of America sent Plaintiff a letter:

> We have not received your past due payments, so we have referred your home loan to our Foreclosure Review Committee for review. This does not necessarily mean you will lose your home to foreclosure. We want to work with you and are here to help, so please read below about the various options available through BAC Home Loans Servicing, LP to help you avoid foreclosure.

85. On December 30, 2010, ReconTrust Company, N.A., sent to Plaintiff notice:

> NEVADA IMPORTANT NOTICE
> **NOTICE OF DEFAULT/ELECTION TO SELL UNDER DEED OF TRUST**
> NOTICE IS HEREBY GIVEN THAT:
> **RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 11/06/2006...along with STATE OF NEVADA FORECLOSURE MEDIATION PROGRAM, ELECTION/WAIVER OF MEDIATION FORM**.

86. On January 5, 2011, BAC sent to Plaintiff Notice **(Exhibit 11)**.

> Our records show that this loan is in foreclosure. Per your request, we have enclosed information concerning the reinstatement of this loan.
>
> THIS **REINSTATEMENT CALCULATION** IS ONLY GOOD THROUGH 01/14/2011.
>
> 1 Monthly Payments @ $2,660.24
> 3 Monthly Payments @  2,451.94
>
> For certain loan types, monthly payments in default will be calculated based on the Minimum Payment due, as defined in your loan documents.
>
> Accrued Late Charges:                  $0.00
> Uncollected Late Charges:           $357.78
> Escrow Deficiency:                        $0.00

27

| | |
|---|---|
| Property Inspection Fees: | $15.00 |
| Property Preservation Fees: | $0.00 |
| Foreclosure Attorney/Trustee Fees: | $300.00 |
| Foreclosure Expenses: | $378.34 |
| Bankruptcy Attorneys' Fees: | $0.00 |
| Bankruptcy Expenses: | $0.00 |
| Other/Miscellaneous Fees: | $50.00 |
| RETURN PAYMENT FEE: | $50.00 |
| | |
| Sub-Total: | $11,117.18 |
| | |
| Suspense/Partial Payment: | ($1,977.60) |
| | |
| *Total Due: | $9,139.58 |
| | |
| Fees Waived in FULL Reinstatement: | $0.00 |
| Title Fees: | $300.00 |
| Foreclosure Attorney/Trustee Fees: | $300.00 |
| Total Fees Waived: | $300.00 |
| | |
| *Net Total Due: | $8,839.58 |

**\*The Net Total Due reflects the waiver of Foreclosure Attorney/Trustee Fees and/or Title fees (included within Foreclosure Expenses) incurred in processing the foreclosure.** This waiver is to assist you in bringing your loan current and is available if you pay the full Net Total Due.  However, if you only pay a portion of the Net Total Due or require other assistance in bringing your loan current, these fees will not be waived.  You then will be required to pay the Total Due.

87.     On January 13, 2011, ReconTrust sent Plaintiff a copy of the November 6, 2006 NOTE.

Lender is MidFirst Bank, A Federally Chartered Savings Assoc.

88.     On January 26, 2011, a Rescission of Notice of Default was filed with the Clark County Recorder's Office as ins#2011.126.3216.

89.     On February 11, 2011, Bank of America issued Check No. 0004435963 to Plaintiff in the amount of $1,548.81 for escrow overages, **(Exhibit 12)**.

90.     On March 8, 2011, BAC sent Plaintiff a Notice:

BAC Tax Services Corporation, at the request of BAC Home Loans
Servicing, LP, has completed a property tax review of your property. BAC
Home Loans Servicing, LP has learned that there are delinquencies associated
with your property. As a result, it has advanced funds to pay the
delinquencies owing, including any penalties, interest, other fees, and if
available, any property taxes due within 45 days, in order to protect its interest
in the property.

91.     On June 17, 2011, Bank of America sent to Plaintiff a letter, **(Exhibit
13):**

Recently, we found **you may not have received advance notice of a pricing
change that took place in December 2010.** The monthly maintenance fee
for your account referenced above increased in December 2010. Since this
time, if you paid a monthly fee, you were charged the new amount. Because
you may not have received advance notice of this change, your account will
be credited for the increased fee amount each time it is charged on your
statements that have a cycle and date from December 2010 through July 2011.

92.     On or around July 2011, Bank of America sent NOTICE OF

ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS…from BAC

Home Loans Servicing, LP to Bank of America, N.A., effective July 1, 2011.

93.     On November 9, 2011, Bank of America sent NOTICE OF

ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS.

You are hereby notified that the servicing of your mortgage loan, that is, the
right to collect payments from you, is being assigned, sold or transferred from
Bank of America, N.A. to Green Tree Servicing LLC effective December 01,
2011.

94.     On November 22, 2011 Green Tree sent Plaintiff:

NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING
RIGHTS.
You are hereby notified that the servicing of your mortgage loan, that is, the
right to collect payments from you, is being assigned, sold or transferred from
Bank of America, N.A. to Green Tree Servicing LLC ("Green Tree") effective
December 1, 2011.

29

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

95.    Green Tree was in contact with Plaintiff and sent Plaintiff a Borrower Response Package to complete in order to be evaluated for a loan modification.

96.    Plaintiff complied with Green Tree's request and sent a letter, along with submitting all the required financial documentation to be evaluated for a loan modification.

97.    From November 22, 2011, to August 19, 2005, Green Tree sent correspondence to Plaintiff either acknowledging receipt of request for information, and advised Plaintiff that Green Tree was in the process of reviewing the account and servicing files and other information in order to fully investigate Plaintiff's inquiry.

98.    On August 19, 2015, Green Tree sent correspondence to Plaintiff regarding loss mitigation options, including refinancing, loan modification and forbearance.  Green Tree encouraged Plaintiff to contact Green Tree regarding options available.

99.    On April 26, 2013, a Corporate Assignment of Deed of Trust was filed with the Clark County Recorder's Office as ins#2013.426.2558.

100.    The April 26, 2013 Corporate Assignment was executed by Deborah Turner Bey on behalf of MERS, without her disclosing her true employment with Assignee, (*see* **Exhibit 7**).

101.    The April 26, 2013 Corporate Assignment was notarized by Wendy Ramirez, (*see* **Exhibit 7** ).

102.   The April 26, 2013 Corporate Assignment purports to assign all right, title and interest in Plaintiff's Deed of Trust to Green Tree Servicing, LLC.

103.   The April 26, 2013 Corporate Assignment occurred approximately seven years after the Closing Date of the Trust and is in violation of the Trust Agreement, and is therefore, void.

104.   On June 4, 2013, National Default Servicing Corporation sent a letter to Plaintiff:

> This firm has been retained to enforce the terms of the above referenced loan by non-judicial foreclosure.
> The creditor (current beneficiary) to whom the debt is owed is: Green Tree Servicing LLC.  The loan servicer is: Green Tree Servicing LLC.

105.   On June 23, 2013, Fannie Mae Mortgage Help Center sent Plaintiff an Introductory Letter which states in pertinent part:

> Because Fannie Mae is the owner of your loan, we can work directly with your mortgage company to assess your situation and determine what options may be available to you.
> Your mortgage loan that is serviced by Green Tree is currently delinquent and you may soon be facing foreclosure…Your loan is owned by Fannie Mae and that allows you access to a Fannie Mae Mortgage Help Center where you can receive personalized assistance and support.  The Center…is designed to assist homeowners who may be struggling with their mortgage payments and all services are completely free.  Benefits to you: one-on-one mortgage assistance from experienced housing counselors; understand your options and what solutions might work for your situation; get help completing paperwork and starting the process with your mortgage company; have an advocate working for you to resolve your payment problems and ensure timely decisions regarding your mortgage.

106.   From on or around June 2013 to June 2014, Plaintiff was in contact with Jessie Mae Suttle, Contractor, Fannie Mae Mortgage Help Center, who requested by letter and email required forms and supporting documentation from Plaintiff to evaluate her eligibility for a loan modification.  She had complied and sent

and resent financial documents with the assurances from Fannie Mae that Plaintiff would receive assistance "through the Nevada Hardest Hit Fund." Fannie Mae sent multiple KnowYourOptions packets through Nevada's Hardest Hit Fund.

107. On June 14, 2014, Ms. Suttle requested by email Plaintiff's "current paystubs for May and current bank statements for May. "Please completed the application and the privacy policy, 4506-t." [sic].

108. On December 23, 2013, Plaintiff spoke with "Ron," where he stated Plaintiff would be eligible for a HAMP modification in a trial period, interest rate at 4%, for 40 years; requested that Plaintiff write a hardship letter, proof of income, sign the Uniform Borrower Assistance Form 710 included in the packet, and reassured Plaintiff that Fannie Mae would not want to go through foreclosure.

109. On September 3, 2014, Plaintiff sent a final email to Ms. Suttle to check on the status of the modification:

> I have not heard from Fannie Mae with regard to the modification of my loan. Please immediately contact me.

110. Ms. Suttle never responded to Plaintiff's email request.

111. On March 10, 2015, Plaintiff made a "qualified written request" of Ditech pursuant to the Real Estate Settlement Procedures Act (RESPA). The letter requested answers to 98 questions.

112. On October 12, 2015, National Default Servicing sent to Plaintiff, NOTIFICATION PURSUANT TO NEVADA REVISED STATUTES 107.080(2)(c)(3). Servicer: Ditech Financial LLC.

113. On November 17, 2015, Fannie Mae Mortgage Help Center sent another KnowYourOptions form letter to Plaintiff and informing Plaintiff:

"Because Fannie Mae is the owner of your own, we can work directly with your mortgage company to assess your situation and determine what options may be available to you.

114.    On December 7, 2015, National Default Servicing sent to Plaintiff a copy of the November 6, 2006 NOTE: "The lender is MidFirst Bank, A Federally Chartered Savings Assoc.," and a NOTE ENDORSEMENT ALLONGE, **(Exhibit 14)**, signed by Natalie D. Jones, Vice President of MidFirst Bank.  The allonge did not identify the note it was attached to and was not notarized.

115.    On July 31, 2015, a Corporate Assignment of Deed of Trust was filed with the Clark County Recorder's Office as ins#2015.731.0322.

116.    The July 31, 2015 Corporate Assignment was executed by Kathy Jackson & Gregory W. Blackmer on behalf of Bank of America, NA, without disclosing their true employment with Assignee, *(see* **Exhibit 7)**.

117.    The July 31, 2015 Corporate Assignment was notarized by James Raulerson, *(see* **Exhibit 7)**.

118.    The July 31, 2015 Corporate Assignment purports to assign all right, title and interest in Plaintiff's Deed of Trust to Green Tree Servicing, LLC.

119.    The July 31, 2015 Corporate Assignment occurred approximately nine years after the Closing Date of the Trust and is in violation of the Trust Agreement, and is therefore, void.

120.    From September 2, 2015, to the present, Ditech Financial LLC has sent correspondence to Plaintiff and requesting Plaintiff to contact Ditech to discuss loss mitigation options.  Plaintiff also sent financial documentation as requested from

Green Tree.  Defendant has repeatedly and continually violated 15 U.S.C. § 1692(f), using unfair or unconscionable means to collect or attempt to collect a debt. Specifically, Ditech knew they were and are not entitled to collect on the debt. Ditech's correspondence to Plaintiff was harassing, oppressive, abusive, unfair, and misleading pursuant to §§ 1692d, 1692f, and 1692e(2).  Plaintiff challenges Ditech's right to foreclose due to an arbitrator's earlier ruling issuing a Certificate of Non-Foreclosure and disputes that Ditech has a legal right to and requests an injunction against Ditech from further foreclosure proceedings.

     121.   On March 24, 2016, Ditech sent Plaintiff correspondence and stated in pertinent part:

> As a result of your submission of a loan modification application, Ditech and, in limited circumstances your investor, Fannie Mae, are required to provide you with a copy of all written appraisals or valuations created or developed in connection with your application.

     122.   On March 25, 2016, Ditech finally sent Plaintiff correspondence and made the following representation more than 5 years after Fannie Mae stopped corresponding with Plaintiff:

> **You were evaluated for mortgage payment assistance based upon the eligibility requirements of Fannie Mae, the owner of your mortgage account.**

     123.   On December 4, 2015, a Notice of Default was filed with the Clark County Recorder's Office as ins#2015.1204.2853 by National Default Servicing.

     124.   There are no recorded Substitution of Trustee filed with the Clark County Recorder's Office as required by NRS 107.028.

34

125.    Plaintiff alleges that only the Depositor is the rightful party that can convey the asset into the trust pursuant to investor offering documents as filed with the Securities and Exchange Commission.

126.    On December 14, 2015, Plaintiff sent to Ditech a "qualified written request." The letter requested answers to 35 questions. Ditech did not respond in violation of mortgage servicing rules under RESPA Reg. X.

127.    On December 29, 2015, Plaintiff elected to enroll and participate in the State of Nevada Foreclosure Mediation Program.

128.    On January 22, 2016, the mediator sent to the parties a Notice to Appear, (**Exhibit 15).**

> Failure by the beneficiaries of the deed of trust, or their representatives, to attend and participate at the mediation in good faith or to bring all requisite documents and authorities to the mediation, shall result in the mediator preparing and submitting a statement to the Foreclosure Mediation Program Administrator of the facts which may result in an inability to proceed with the foreclosure. All parties are herein noticed to comply with Rule 12 of the Foreclosure Mediation Program. The parties shall participate in a document conference or meet with the mediator to determine what the beneficiary needs to make a final decision. All required statements, disclosure forms, and documents must be submitted to the presiding mediator at least 10 days prior to the scheduled mediation, unless otherwise agreed. Pursuant to Rule 16 of the Foreclosure Mediation Rules, in the event the foreclosure issues are resolved before the scheduled mediation, the parties must, no later than two business days prior to the scheduled mediation date, notify the mediator of their settlement. Failure to abide by Rule 16 may subject the parties to sanctions.
>
> All beneficiaries of the deed of trust or assignees, or their representatives, who are seeking to invoke foreclosure against a homeowner, shall participate in the foreclosure mediation program, and shall be represented at all times during a mediation by a person or persons who have the authority to modify the underlying loan, and who shall bring to the mediation the following documents:
>
> The original or a certified copy of the deed of trust;

35

The original or certified copy of the mortgage note;
Each assignment of the deed of trust;
Each assignment or endorsement of the mortgage note; and,
an appraisal or Brokers Price Opinion (BPO) dated not more than 60 days
prior to the date of the mediation.
The homeowner and lender representative with authority to modify the
underlying loan shall be physically present, or, if approved by the mediator,
may participate by phone for good cause.

129.   On February 22, 2016, Michael Carrigan prepared a Property

Securitization Analysis Report and confirmed a break in the chain of title: (*see*

**Exhibit 7).**

**No Recorded Substitution of Trustee as mandated by Nevada NRS
107.028  Appointment of Successor Trustee by Beneficiary**

130.   A hearing was held on March 3, 2016 before the State of Nevada

Foreclosure mediator who denied a Certificate of Foreclosure (*see* **Exhibit 3**):

**PART 2D: BENEFICIARY (LENDER) PARTICIPATION**

*If any item is checked below, the mediator may recommend sanctions.
(Determine specific sanction recommendations with particularity in Part 2E).*

**Beneficiary (Lender), and/or its Representative, failed to demonstrate
authority, or provide access to a person with authority, to negotiate a loan
modification.  (NRS 107.086(5); FMP Rule 11(1)(a))**

**Beneficiary (Lender), and/or its Representative, failed to bring to
mediation each document required.  (NRS 107.086(5); FMP Rule 12(7)
(Check All Missing or Incomplete Documents):**

*A certification with an original signature of each assignment of the deed of
trust (DOT), or judicial order pursuant to NRS 104.3309.*

**A foreclosure Certificate should not issue.**

131.   On May 15, 2016, Plaintiff sent MidFirst a letter **(Exhibit 16)**

requesting the bank's copy of the Assignment of Mortgage Deed of Trust and any

36

Exhibits attached, pursuant to the Nevada Uniform Commercial Code. MidFirst did not respond.

132.   Clearly, National Default Servicing did not participate in the mediation in good faith.

133.   Plaintiff attributes her injuries to Defendants' baseless foreclosure litigation despite Defendants' lack of interest in the mortgage resulting in incurring damages when Plaintiff is compelled to defend her interests.

134.   Well after the State of Nevada Foreclosure Mediation Program announced on its website that the program will end and that all mediations must be completed by April 30, 2017, National Default Servicing nevertheless proceeded with foreclosure by recording another Notice of Default and Notice of Trustee's Sale after the period to file for mediation had expired.

135.   Defendants' deceptive conduct consists of Defendants' initiation of unfair, misleading and abusive legal process against Plaintiff having to defend herself against the foreclosure action and Defendants' concurrent agreement to execute a fraudulent assignment and to falsify court documents clouding title to her home.

136.   Based on information and belief, NRS 107.086(6) require that a beneficiary have someone present at the mediation with the authority to modify a loan. National Default Servicing demonstrated that it had no intention to negotiate in good faith before the mediation occurred, nor had the authority to modify Plaintiff's loan as represented.

137.   National Default Servicing waived its right to file for judicial review and undisputedly failed to timely take actions to enforce its rights under the First Note and the First Deed of Trust.

138.   Based on information and belief, because National Default Servicing failed to provide the mandatory documents to establish its right to foreclose on the Real Property and then later failed to challenge the Certificate of Non-Foreclosure with the ability to enforce the 1st Deed of Trust, National Default Servicing is barred from pursuing non-judicial foreclosure with the ability to enforce the 1st Deed of Trust.

139.   Following the arbitrator's ruling, National Default Servicing filed another Notice of Default knowing that the State of Nevada Foreclosure Program Mediation Program had closed resulting in prejudicing and frustrating Plaintiff's right to a fair hearing which foreclosed the possibility of securing a loan modification.

140.   Defendants used various schemes to mislead Plaintiff and thus attempted fraudulently to deprive Plaintiff of her home through an illegitimate foreclosure sale.  Those schemes to defraud revolved around a fraudulent mortgage assignment and related foreclosure actions to seize title to Plaintiff's home through an illegitimate foreclosure sale.

141.   The allegedly fraudulent assignment allowed Defendants to perpetrate and conceal the fraud by failing to file an appeal which precluded the state court from ascertaining whether Defendants were the proper parties to initiate the foreclosure proceedings.  On these facts alone, it was Defendants' misrepresentations that

triggered the ongoing and continuing fraudulent conduct by Defendants that led to Plaintiff's injuries.

142. Had the proper mortgagee, whoever that is, elected to initiate its own foreclosure proceedings against Plaintiff, she would have faced double liability, and Defendants' fraudulent assignment would lead to the unlawful result of two separate mortgagees – one legitimate and one illegitimate – foreclosing on Plaintiff's home. The fact that the legitimate mortgagee has not initiated foreclosure proceedings only reinforces the conclusion that Defendants' allegedly fraudulent foreclosure will lead to Plaintiff's injury

143. Defendants were not authorized to initiate the baseless foreclosure proceedings thus injuring Plaintiff by attempting to cause further unnecessary delay and imposed an additional financial burden on Plaintiff by having to defend against Defendants' baseless foreclosure and fraudulent conduct.

144. Plaintiff suffered damages by means of incurring a financial obligation for illicit payments received by Defendants, through the mechanism of increasing Plaintiff's debt to third-party lenders, which engaged the services of the collection agencies.

## FIRST CAUSE OF ACTION

## DEFENDANTS' LACK OF STANDING/ NRS 107.086(4)

## STATUTORILY DEFECTIVE FORECLOSURE

**A.** **No Defendant Has Standing to Foreclose**

145. Plaintiff re-alleges all preceding paragraphs in their entirety.

39

146.    An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have an equitable right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the purported power of sale, or power to foreclose non-judicially, by the above specified Defendants, and each of them, no longer applies.

A non-judicial foreclosure may only occur in Nevada upon demonstration that the foreclosing party is both the current beneficiary of the deed of trust and the current holder of the promissory note. *Bergenfield v. Bank of Am.*, 302 P.3d 1141 (Nev. 2013). Further, a party seeking a non-judicial foreclosure must strictly comply with the statutes governing foreclosure.

Defendants violated the good faith requirements of NRS 107.080, the filing of the Default was wrongful to the extent that Defendants' failure to provide a detailed accounting that Plaintiff would have to pay to protect the property from foreclosure constitutes a breach of the statute, but also that Defendants' refusal to produce any of the required documentation constitutes breach of good faith which interfered with and prejudiced Plaintiff's opportunity to a fair and equitable foreclosure mediation process.

147.    Plaintiff requests this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Defendants' actions in the processing, handling and attempted foreclosure of this §1031 - Exchange involved numerous fraudulent, false, deceptive and misleading practices, including,

but not limited to, violations of Federal and Nevada State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Real Property remain in Plaintiff's name during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void."

148.        But for Bank of America's creating an illegal escrow account, collecting unlawful sums that breached the loan agreement which interfered with Plaintiff making loan payments, Plaintiff would not have been delinquent all in violation of the Deed of Trust, RESPA and Nevada laws. On these facts, it was Defendants' alleged misrepresentations in attempts to seize Plaintiff's home through unauthorized foreclosure actions rather than Plaintiff being delinquent on making loan payments that led to her injuries.

149. Plaintiff alleges that Defendants initiating a foreclosure would not have occurred against Plaintiff but for Defendants' alleged malicious conduct when they formulated false documents with the knowledge of their falsity resulting in an improper transfer of interests for seizing Plaintiff's property through committing acts of statutory fraud.

150. Defendants' acts and omissions have proximately caused Plaintiff actual damages, including, but not limited to severe emotional distress, loss of sleep, frustration, anger, fear, anxiety, and irreparable harm to the right of peaceful enjoyment of one's property and the imminent threat of losing one's home through an unauthorized foreclosure.

151.        As such, upon information and believe, Plaintiff asserts a viable claim that Defendants violated NRS 107.080 and that the Trustee's Sale must be enjoined and barred until such time as Defendants comply with NRS 107.080.

152.   Pursuant to NRS 107.080, the Nevada Legislature recognized damages for failure to comply with NRS 107.080 as creating a claim for damages in the amount of $5,000 or treble actual damages and attorney's fees.

153.   This remedy is in addition to other remedies at law.

**B.     Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

154.   Since the creation of Defendant's Deed of Trust, Defendant MERS was named the "nominee beneficiary" of the Deed of Trust.

155.   Plaintiff is informed and believes, and thereon alleges that Defendant MERS lacks the authority under its corporate charter to foreclose a Deed of Trust, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of Payment Intangible Chattel Paper Transferable Records as the underlying collateral to the Tangible Note for Accommodation Bill of Exchange.

156.   Plaintiff is informed and believes, and thereon alleges that to conduct a foreclosure action, a person or entity must have legal capacity as an interested party and standing.

157.   The Tangible Note in this action identifies the entity to whom it accommodated, the Originator. Therefore, the Tangible Note herein cannot be transferred in the ordinary course of business. The attachments to the notice of default do not establish that indorsements were made, nor are there any other notices, which establish that a Tangible Note negotiation was executed in the ordinary course of

business, nor are there any other notices, which establish that the Originator sold the Tangible Note to another party for full value.

158. Furthermore, insofar as the parties to the §1031 - Exchange of Defendants' purported transfer of enforcement contract rights over the underlying Deed of Trust base their claim that the Tangible Note and underlying Security was negotiated by operation of law in the ordinary course of business to Defendant Fannie Mae, the Trustee of the § 1031 - Exchange herein, by the Originator, it is well established by Nevada State law that the assignment of a Deed of Trust does not automatically assign the Tangible Note nor the underlying Payment Intangible Transferrable Record, as the security interest is incident to the Tangible Note debt obligation.

159. Pursuant to Nevada State law, one must be able to prove their capacity of holder of the Tangible Note as one with rights acquired in the ordinary course of business to perfect the transfer of enforcement contract rights to the Deed of Trust instrument as collateral for a Tangible Note debt obligation.    Without proper negotiation and physical transfer, the "true sale" of the Tangible Note is invalid as a fraudulent conveyance, or as an unsecured Tangible Note stripped of the Real Property collateral.

160. Defendants MERS failed to submit documents authorizing MERS, as nominee beneficiary for the Originator, to assign the subject Deed of Trust to the Special Purpose Vehicle trustee.   Hence, MERS lacked authority as mere nominee beneficiary to assign Plaintiff's Deed of Trust, making any assignment from MERS defective.  In Nevada, MERS may have the power to *initiate* foreclosure as an agent,

but only when *authorized* by a principal which is both the beneficiary of the deed of trust and the holder of the note.

161.   Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law.   Therefore, Defendant MERS cannot establish that it is entitled to assert a claim in this case.   For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in Plaintiff's Real Property and cannot recover anything from Defendants' with unclean hands.

162.   Defendants, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Plaintiff's Real Property under the Deed of Trust on the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff great and irreparable injury in that Real Property is unique.

163.   The wrongful conduct of the above-specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff.   Plaintiff will not have the beneficial use and enjoyment of the Home and will lose the Property.

164.   Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate to prevent imminent irreparable loss to Plaintiff.   Plaintiff suffered and will continue to suffer unless Defendants' wrongful conduct is restrained and enjoined because Real Property is

inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage she will suffer.

## SECOND CAUSE OF ACTION

### FRAUD IN THE CONCEALMENT

#### (Against Defendant MidFirst Bank)

165.    Plaintiff re-alleges all preceding paragraphs in their entirety.

166.    Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

    a.    Concealed or suppressed a material fact;
    b.    Had knowledge of this material fact;
    c.    That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff;
    d.    That the Defendant suppressed or concealed this fact with the intention that Plaintiff be misled as to the true condition of the property; and
    e.    That Plaintiff was reasonably so misled; and
    f.    That Plaintiff suffered damage.

167.    Defendant MidFirst Bank concealed the fact that they were not a Federal Reserve Depository Bank. The purported lender claims to have accepted by negotiation the issuer, Plaintiff's negotiable instrument, as debtor in a deposit account. Defendant MidFirst Bank furthered their deception by purporting to give consideration for an instrument in the form of real money executing an underlying obligation (indebtedness) between the parties to the purported contract. Defendant MidFirst Bank concealed in the presentation of the terms of the Mortgage contract a cross acceptance of which Plaintiff, the issuer of the negotiable instrument would accept ownership of the real property collateral evidenced by the Warranty Deed for executing an accommodation negotiable instrument, and pledged security agreement

45

on behalf of MidFirst Bank, the Accommodated party, for the purpose of a material variation to the purported contract in which Plaintiff would be acting as a *Guarantor* for MidFirst Bank, the Accommodated party, to use Plaintiff's accommodation party's promise to put the accommodated into funds as surety and a personal property security interest in Plaintiff's pledged security instrument as collateral to secure their account debtor status for the purpose of a §1031 – Exchange (table funded) transaction for a service release premium shortly after the closing of the purported loan. Defendant MidFirst Bank concealed a third-party Sponsor Bank warehouse lender as well as the terms of the Securitization Agreements including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.   By concealing the securitization, the true character of the purported loan in this way had a materially negative effect on Plaintiff that was known by Defendant MidFirst Bank but not disclosed.

168.    Defendant MidFirst Bank knew or should have known that there was no meeting of the minds between Plaintiff and the Originator MidFirst Bank regarding the true capacity of the parties and material facts of the purported loan and that most importantly, it created no indebtedness underlying obligation between the Defendants and other parties to the § 1031 – Exchange.

169.    Defendant MidFirst Bank knew or should have known that had the truth been disclosed, Plaintiff would not have pledged a security agreement to MidFirst Bank, the Accommodated Party, as an alternate means of collection.

170.    Defendant MidFirst Bank intended to induce Plaintiff based on these material misrepresentations and improper disclosures.

46

171.     Plaintiff's reasonable reliance upon the misrepresentations was detrimental.   But for Defendant's failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern.   Plaintiff would have known of Defendant's true intentions and profits from the proposed purported loan.   Plaintiff would have known that the actions of Defendant MidFirst Bank would have an adverse effect on the value of Plaintiff's home by clouding the title.

172.     Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter the §1031 – Exchange purported loan and accept the Services as Accommodated Party herein.

173.     Defendants were aware of the misrepresentations and profited from them.

174.     As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of the loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff incurred costs and attorney's fees.

175.     Defendant MidFirst Bank is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.   As such, Plaintiff is entitled to recover in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

## THIRD CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT

176.     Plaintiff re-alleges all preceding paragraphs in their entirety.

47

177.    Defendants, intentionally misrepresented to Plaintiff that Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

178.    Defendants misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Deed of Trust; however, this was not true and was a misrepresentation of material fact.  The documents state that the Originator allegedly sold the mortgage loan instrument to FNMA 2006-123 Trust.  Defendants are attempting to collect on an intangible debt obligation via the §1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property.  This type of conduct is outrageous.  Defendants are fraudulently foreclosing on the Real Property which they have no monetary or pecuniary interest, and doing so with unclean hands.

179.    Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter the §1031 – Exchange and accept the Accommodated Services as alleged herein.

180.    The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation to induce Plaintiff to submit to the foreclosure on the Real Property as opposed to recovering from predecessors in the § 1031 – Exchange on the Payment Intangible Obligation.

181.    Defendants were aware of the misrepresentations and attempt to profit from them by seizing Plaintiff's home.

182.    As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of the loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff incurred attorney's fees and costs.

183.    Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## FOURTH CAUSE OF ACTION

### (Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO))

184.    Plaintiff re-alleges all preceding paragraphs in their entirety.

185.    Defendants are liable to Plaintiff under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, ("RICO").

186.    Plaintiff is informed and believes, and thereon alleges that Defendants formed, assisted in, implemented, and/or took part in an enterprise devised to defraud Plaintiff of its interest in the Subject Property.

187.    Plaintiff is informed and believes, and thereon alleges that Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson assisted in, implemented, and/or took part in the actions described herein.

188.    Plaintiff is informed and believes, and thereon alleges that Defendants and

49

Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson used the Clark County Recorder in the furtherance of their enterprise with a similar pattern and method of commission.

189.     Defendants' acted with other entities with respect to Plaintiff's loan who are and were each a person as defined in 18 U.S.C. § 1961(3) at all times relevant to this transaction.

190.     The ongoing association of Defendants and its agents and employees, and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson, and other entities are linked by their actions described herein sufficiently form an enterprise as defined in 18 U.S.C. § 1961(4).

191.     Additionally, Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's use of Clark County Recorder in the furtherance of their actions sufficiently link them to an enterprise as defined in 18 U.S.C. § 1961(4).

192.     Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson unlawfully executed, or caused to be recorded the Assignments on December 29, 2010, April 26, 2013, and July 31, 2015, with the specific intent to defraud Plaintiff.

193.     Plaintiff is informed and believes, and thereon alleges that on Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson caused to be recorded, the

50

Assignments with the Clark County Recorder as instrument numbers 201007200091045, 201012290003426, and 201304260002558.

194.   As of the date of this Complaint, about 7 years later, the Assignments remain recorded with the Clark County Recorder in its original form.

195.   As of the date of this Complaint, Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson have taken no action to correct, amend, or substitute the fraudulent Assignments with the Clark County Recorder, and it is unlikely that they will take any action to correct, amend, or substitute the Assignment anytime in the future, such that their alleged misconduct will continue indefinitely into the future.

196.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson are and were engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5) at all times relevant to this transaction to harm Plaintiff by Defendants intentionally interfering with clouding title to Plaintiff's property and defraud Plaintiff of her Property.

197.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson communicated with each other, and with the Clark County recorder via mail, telephone, wire, and electronic mail communications within a ten-year period immediately preceding the date of this Complaint with the specific intent to defraud Plaintiff.

198.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson acted in the following manner, which was devised and implemented as a scheme to defraud was to obtain illegal title to Plaintiff's home through an illegitimate foreclosure:

   a. Drafting and executing the Assignment;
   b. Recording the Assignment with the Clark County Recorder;
   c. Filing legal actions relying on Defendants' failure to execute or record a Substitution of Trustee to demonstrate, amongst other things, Defendants' standing;
   d. Seeking a second illegitimate foreclosure relying in part on Defendants' failure to execute or record a Substitution of Trustee;
   e. Operated their enterprise from across state lines;
   f. Obtained or transmitted funds, supplies and/or services across state lines;
   g. And/or otherwise utilized interstate commerce to further their fraudulent enterprise.

199.   These actions were part of a scheme or artifice to defraud Plaintiff.

200.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's conduct described herein constitutes unlawful conduct, including that conduct being devised and implemented to defraud Plaintiff.

201.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's representations to Plaintiff, the Clark County Recorder about the possibility, legality, and truthfulness of the Assignments were not true.

202.    Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's representations were material to the scheme to defraud Plaintiff.

203.    Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's communicated their representations using the United States Postal Office.

204.    Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson communicated their representations using wire communications.

205.    Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson communicated their representations to Plaintiff more than six times using interstate commerce.

206.    Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson individually and collectively sent Plaintiff more than six letters using the Postal Service during the times relevant to this transaction.

203.    Defendants called Plaintiff more than six times using the telephone service during the relevant times to this transaction.

53

207. Plaintiff has been damaged due to Defendants' failure to record a Substitution of Trustee and Assignments of the Deed of Trusts.

208. Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's actions constitute a pattern of fraudulent conduct.

209. Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson action, both individually and collectively, amongst themselves, with Plaintiff, and the Clark County Recorder constitute a pattern of fraudulent conduct.

210. Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson used false or fraudulent pretenses, representations, or promises as part of a scheme or artifice to defraud Plaintiff.

211. Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson described herein constitute Fraud by Wire, Radio, or Television under 18 U.S.C. § 1343.

212. Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy

Jackson, Gregory W. Blackmer and James Raulerson's actions described herein constitute Fraud and Swindles under 18 U.S.C. § 1341.

213.   Plaintiff is informed and believes, and thereon alleges that Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson both individually and collectively, were related in that their actions had similar purposes, results, participants, victims and methods of commission.

214.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson have executed, or caused to be executed, other impossible mortgage assignments in Clark County, Nevada Recorder's Office to support foreclosing filings.

215.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson, both by each individually and collectively, constitute their regular way of conducting their ongoing enterprise.

216.   Upon information and belief, Plaintiff alleges that it is likely that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson will continue to file mortgage assignments in the Clark County Recorder's Office that are unlawful and/or fraudulent, or continue to fail to take corrective action to notify the courts of impossible assignments they have already filed to further their fraudulent enterprise.

217.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's in this Count constitute a scheme to defraud Plaintiff of money or the Subject Property.

218.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's in this Count constitute a scheme to defraud Plaintiff of money or the Subject Property.

219.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson took the actions defined in this Count with the knowledge its actions would likely result in their defrauding Plaintiff.

220.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson took the actions defined herein with callous and reckless indifference to the rights of others.

221.   Plaintiff was injured by Defendants' RICO violations, including by having to defend a foreclosure action based in part on the impossible Assignment, for facing potential multiple liability from others who may claim an interest in the mortgage or note, for clouding Plaintiff's property title by having the impossible Assignments appear and remain on the recorded title with the Clark County Recorder, for wrongly

foreclosing on the interest in her property, for interfering with a mediation hearing, and for the other actions described herein.

222.   Plaintiff is informed and believes, and thereon alleges that the actions of Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson were the actual and proximate cause of Plaintiff's injuries and each are liable to her under this Count.

223.   Plaintiff is entitled to damages, treble damages, punitive damages, attorneys' fees, and costs for Defendants' RICO violations.

## FIFTH CAUSE OF ACTION

## FDCPA

224.   Plaintiff re-alleges all preceding paragraphs in their entirety.

225.   Plaintiff purchased her home with a mortgage loan through MidFirst Bank.

226.   The Note, payable to MidFirst Bank, is a debt within the meaning of the FDCPA, 15 U.S.C. §§ 1692a(5), as it was an alleged obligation of Plaintiff to pay money in return for the loan to purchase her primary residence.

227.   Plaintiff is informed and believes, and alleges that Defendants' actions of filing and maintaining an illegitimate foreclosure action upon her with the use of false statements and evidence constitute a false, deceptive, and/or misleading practice in an attempt to collect a debt in violation of the FDCPA, 15 U.S.C. § 1692a(5).

228.   Plaintiff has suffered emotional distress as a result of Defendant's malicious actions.

229.   Defendants are liable to Plaintiff under this Count for its FDCPA violations in an amount equal to or greater than actual damages in the amount of $2,300 for each of

57

Defendants' violations of the FDCPA, 15 U.S.C. § 1692k(a)(a); damages for emotional distress; statutory damages in the amount of $1,000, 15 U.S.C. § 1692k(a)(2)(A); and attorneys' fees and the costs of this action, 15 U.S.C. 1692k(a)(3).

## SIXTH CAUSE OF ACTION

### UNCONSCIONABLE CONTRACT

### (Against Defendant MidFirst Bank - FNMA 2006-123)

230.   Plaintiff re-alleges all preceding paragraphs in their entirety.

231.   The actions of Defendants as set forth herein, resulted in Plaintiff being forced, tricked, and mislead into parting with her property.

232.   Generally, one must prove the following to bring a legally sufficient claim of Unconscionable Contract.

   a.   Undue Influence;
   b.   Duress;
   c.   Unequal Bargaining Power;
   d.   Unfair Surprise; and
   e.   Limited Warranty

233.   Defendant MidFirst Bank presented in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met to qualify for a loan of money for the subject property from MidFirst Bank.

234.   Defendant MidFirst Bank presented in the origination of the purported loan that a preliminary signature on the Mortgage loan contract was required to "lock in" an interest rate regarding the terms of the purported loan.

235.   Defendant MidFirst Bank failed to clarify in the terms of the Mortgage loan contract that MidFirst Bank, the Originator on the contract, was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money.  MidFirst Bank concealed they were financially benefitting by bargaining with a third party to acquire a service release premium via wire funds transfer to table fund the purported loan at the closing using a warehouse line of credit.

236.   Defendant MidFirst Bank knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when attempting to grant an alternate means of collection via the Security Instrument real property lien Deed of Trust to MidFirst Bank.

237.   Defendant MidFirst Bank intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.

## SEVENTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against Defendant MidFirst Bank/MERS)

238.   Plaintiff re-alleges all preceding paragraphs in their entirety.

239.   The terms of the mortgage contract are clear.

240.   Pursuant to paragraph 23 – Release, Defendant MidFirst Bank and specifically MERS, their electronic agent, was obligated to satisfy, release and reconvey the beneficial security interest in Plaintiff's pledged Deed of Trust upon payment of all sums associated with the release premium to MidFirst Bank for Accommodated Party services rendered.

59

241.   Defendant MidFirst Bank was paid in full for their Accommodated capacity to the Tangible Note and Deed of Trust when it sold and relinquished its interest in Plaintiff's real property to Depositor.

242.   Defendant MidFirst Bank failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Deed of Trust.

## EIGHTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

243.   Plaintiff re-alleges all preceding paragraphs in their entirety.

244.   Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

        a.   Breach of full disclosure;
        b.   Breach of good faith and fair dealing;
        c.   Misuse of superior or influential position;
        d.   Misuse of superior knowledge; and
        e.   Failure to act in another's best interest

245.   Defendant MidFirst Bank failed to disclose to Plaintiff that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to FNMA 2006-123.

246.   Defendant MidFirst Bank as beneficiary under the Deed of Trust having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property)

60

therein after receiving payment for all sums represented as the service release premium.

247.    After November 6, 2006, and unknown to Plaintiff, Defendant MidFirst Bank for payment rendered through a service release premium divested itself of their capacity under Accommodated Note, but did not comply with the covenants of the Deed of Trust specifically, Covenant 23 – Release.

248.    MidFirst Bank's acting not in the best interest of the grantor of the Deed of Trust failed to adhere to their Fiduciary Duties.  Defendant MidFirst Bank was to satisfy, release and reconvey the security instrument allowing Plaintiff to maintain clear and marketable title.  Because of its failure to comply with the Deed of Trust, Defendants caused a cloud on Plaintiff's superior claim to title.  Thus, Plaintiff was harmed.

## NINTH CAUSE OF ACTION

## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

249.    Plaintiff re-alleges all preceding paragraphs in their entirety.

250.    Bank of America's misrepresentations to Plaintiff, a Nevada consumer, regarding the operation of its mortgage modification practices violates the Nevada Deceptive Practices Act, in particular, Bank of America's deceptive conduct breached its obligations under Nevada Revised Statute § 598.0915(9), which provides that it is a deceptive practice for a person to "[a]dvertise[] goods or services with the intent not to sell or lease them as advertised;" Nevada Revised Statute § 598.0915(15), making it a deceptive trade practice for a person to

"[k]nowingly make [] any other false representation in a transaction"; Nevada

Revised Statute § 598.0928(8), which declares that it is a deceptive trade practice

for a person to "[k]nowingly misrepresent [] the legal rights, obligations or

remedies of a party to a transaction;" Nevada Revised Statute § 598.0923(3), which

makes knowing violations of "a state or federal statute or regulation relating to the

sale or lease of goods or services" a violation of the Deceptive Trade Practices Act.

251.    Based on information and belief, Bank of America engaged in a

pattern and unlawful practices in violation of the Nevada Deceptive Trade Practices

Act §§ 598, et seq., in that it made false promises and used deception, deceptive

practices, and/or misrepresentations in connection with Plaintiff's mortgage

modification.

252.    Based on information and belief, Plaintiff did not take other actions

that she would have otherwise taken to save her home from foreclosure but for

Defendants' promises that she would be eligible for a HAMP after she stopped

making payments on her home.

253.    Plaintiff alleges that the truth was that the Defendants never intended

to review Plaintiff's modification application, honestly or otherwise, and that they

did not review Plaintiff's application in good faith.

254.    Based on information and belief, Plaintiff alleges that the truth was

that Plaintiff's modification package was never submitted to underwriting for final

review and approval.

## TENTH CAUSE OF ACTION

### Falsification

255. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully rewritten herein. Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson at the behest of their employers, knowingly made a false statement within the Assignments when she stated they had the authority to sign on behalf of MERS and Countrywide Bank, FSB, as MERS' Assistant Secretary and Vice President.

256. Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson's false statement was made with the purpose to mislead the arbitrator in the performance of their official function within the foreclosure action. Their false statements were sworn before notaries public.

257. As a result of Defendants' and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulersons' false statements, Plaintiff suffered damages in the amount of $10,000.00, and damages for emotional distress. Accordingly, Defendants are jointly and severally liable to Plaintiff for: $10,000.00; damages for emotional distress; attorney's fees; the costs of the action; and other expenses incurred as a result of prosecuting this action.

## ELEVENTH CAUSE OF ACTION

### Civil Conspiracy

258. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully rewritten herein. Defendants and Natalie D. Jones, Matthew J. Petersen,

Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson agreed to execute the Assignments, knowing they contained false representations.

259.   Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson, at the behest of Defendants, signed the Assignments on December 29, 2010, April 26, 2013, and July 31, 2015.

260.   Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson on behalf of Defendants, recorded the fraudulent Assignments in the Clark County Recorder's Office. Accordingly, Defendants and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulerson, conspired to commit the tort and crime of falsification.

261.   Defendants' and Natalie D. Jones, Matthew J. Petersen, Deborah Turner Bey, Wendy Ramirez, Kathy Jackson, Gregory W. Blackmer and James Raulersons' actions of conspiring to commit the tort and crime of falsification is an unlawful act, which was independent from the actual conspiracy.

262.   As a result of Defendants' agreement to execute the Assignments and the resultant falsification, Plaintiff suffered damages of $10,000.00, and damages for emotional distress.  Accordingly, Defendants are jointly and severally liable to Plaintiff for: $10,000.00; damages for emotional distress; attorney's fees; the costs of the action; and other expenses incurred as a result of prosecuting this action.

# TWELFTH CAUSE OF ACTION

## QUIET TITLE

263.   Plaintiff re-alleges all preceding paragraphs in their entirety.

264.   Defendants named herein claim an interest and estate in the property adverse to Plaintiff in that Defendant assert they are the owners of the note secured by the Deed of Trust to Plaintiff's property, the subject of this suit.

265.   Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiff in that Defendants assert to be the owners of a Tangible Note secured by the Deed of Trust to the Real Property, the subject of this suit.

266.   The claims of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property, or any part of the Real Property construed and hypothecated as "After Acquired Collateral" the Intangible Payment transferable record to the §1031 - Exchange.

267.   The claim of all Defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these claims constitute a cloud on Plaintiff's title to the Real Property.

268.   Plaintiff alleges that Defendants have either sat on their rights or have failed to act on those rights for 8 years and have thus abandoned their security interest if any legitimately existed.

269.   Defendants have failed to establish any interest in the subject Real Property and therefore, any alleged transfer or assignments of Defendants' rights or interest in the subject Real Property must be considered invalid and void.

65

270.   Plaintiff, therefore alleges upon information and belief, that none of the parties to the §1031 - Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's Real Property Estate.

271.   Plaintiff further alleges that the Note securing the Deed of Trust has been satisfied.  There remains no outstanding amount owning on the Note.

272.   Defendants initiated and undertook the foreclosure process without authority to do so.  As of the time they sent the Notice of Default, they were not authorized to do so under the holdings of the Nevada Supreme Court pursuant to *Leyva v. National Default Servicing Corp.*, 127 Nev., Advance Opinion 40, 255 P.3d 1275, (July 7, 2011); and *Pasillas v. HSBC Bank USA*, 127 Nev., Advance Opinion 39, 255 P.3d 1281 (July 7, 2011), having failed to conform with NRS 104.3201.

273.   Defendants' failure to present authority to commence the foreclosure process void any subsequent actions and renders it a nullity by operation of law.

274.   Defendants assert claims to title adverse to Plaintiff's based on void foreclosure proceedings.

275.   Plaintiff requests a declaratory judgment from this Court permanently enjoining Defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the Real Property; that Plaintiff is the owner of the Real property, and that Plaintiff's rights to the Real property and interest in the Real Property are superior to any adverse interest claimed by Defendants.

276.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will suffer damages, including special damages for attorneys' fees for removing the cloud on Plaintiff's property title.  Defendants' conduct was fraudulent, oppressive and malicious entitling Plaintiff to an award of punitive damages under NRS 42.

277.     Plaintiff requests the court award Plaintiff's costs of this action, and such other relief as the court may deem proper.

## THIRTEENTH CAUSE OF ACTION

## SLANDER OF TITLE

278.     Plaintiff re-alleges all preceding paragraphs in their entirety.

279.     Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

    a.   There was a communication to a third party of
    b.   a false statement;
    c.   derogatory to another's title;
    d.   with malice; and
    e.   causing special damages.

280.     There are no UCC 1 Financial Statements perfecting a personal property interest regarding the purported true sale(s) and conveyance of credit swaps in 26 U.S. Code §1031 – Exchange of transferable record Smart Note personal property (payment intangible) in accordance of local law of jurisdiction.

281.     There are no UCC 1 Financial Statements perfecting personal property interest in the Accommodated Deed of Trust contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice

to the world of the true capacity of the purported parties in the §1031 – Exchange in

performance of the securities of FNMA 2006-123.  (See Asset Securitization

Comptroller's Handbook Nov. 1997 http://www.occ.gov/publications/publications-

by-type/comptrollers-handbook/assetsec.pdf)

282.    Such instruments remain unrecorded as "Secret Liens" within the

collateral file and was never submitted for recordation to perfect Defendant's rights to

the Accommodated Tangible Note and pledged Deed of Trust lien and the right to

enforce an alternate means of collection.

283.    Equitable rights to the Payment Intangible in the§ 1031 – Exchange do

not extend to a lien on Real Property in accordance with statutory law.

284.     Defendants, by withholding such facts, have potentially committed a

grave error Slander of Title causing special damages.

285.    The act of recording the purported January 18, 2007, Assignment of

Deed of Trust into the Official Records of the Clark County Recorder's Office is a

communication to a third party of false statement derogatory to Plaintiff's title made

with malice causing special damages to the Plaintiff's claim of title.

286.    The act of recording the purported December 29, 2010, Corporation

Assignment of Deed of Trust into the Official Records of the Clark County

Recorder's Office is a communication to a third party of false statement derogatory to

Plaintiff's title made with malice causing special damages to the Plaintiff's claim of

title.

287.    The act of recording the purported April 26, 2013, Corporate Assignment of Deed of Trust into the Official Records of the Clark County Recorder's Office is a communication to a third party of a false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

288.    The act of recording the purported July 31, 2015, Corporate Assignment of Deed of Trust into the Official Records of the Clark County Recorder's Office is a communication to a third party of a false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

289.    Defendants disparaged Plaintiff's exclusive valid title by and through the preparation, posting, publishing and recording of documents, including but not limited to the Notice of Default, Notice of Trustee's Sale and others evidencing the commencement of non-judicial foreclosure by parties who do not possess that right pursuant to the arbitrator's issuance of a Certificate of Non-Foreclosure, **(see Exhibit 3)**.

290.    Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title or interest in Plaintiff's property.  The recording of these documents were naturally and commonly to be interpreted as denying disparaging, and casting doubt upon Plaintiff's legal title to the real property.  By posting, publishing and recording said documents, Defendants' disparagement of

Plaintiff's legal title is made to the world at large thereby slandering Plaintiff's title rendering it unmarketable and causing damage.

291.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will suffer damages, including special damages, for the attorney's fees and costs for the removal of the cloud on Plaintiff's property title.  Defendant's fraudulent, oppressive and malicious conduct entitles Plaintiff to an award of punitive damages under NRS 42.

<u>**FOURTEENTH CAUSE OF ACTION**</u>

<u>**TEMPORARY RESTRAINING ORDER AND FOR INJUNCTIVE RELIEF**</u>

292.   Plaintiff re-alleges all preceding paragraphs in their entirety.

293.   Plaintiff is the record title holder of the Property, and is now being threatened with imminent irreparable injury by the conduct of Defendants.

294.   Plaintiff will continue to be in jeopardy of injury by the Defendants' wrongful conduct by the now threatened foreclosure sale, causing irreparable injury by denying them the right to maintain the status quo between the parties pending resolution of the present dispute.

295.   Plaintiff has no adequate remedy at law for both the factual and threatened injuries herein described.  Plaintiff's real property residence and rights involved are non-fungible and utterly unique so that it will be impossible to accurately measure in monetary terms the damage caused by Defendants' wrongful conduct.

296.   Defendants' numerous violations of federal and state statutes and their inability to establish a claim of right to Plaintiff's Note or Deed of Trust establishes Plaintiff's claim as more probable than not and Plaintiff will likely prevail at the time of trial.

297.   Plaintiff requests that Defendants and its agents and employees be enjoined from prosecuting any continuance of a foreclosure sale pending trial.

## FIFTEENTH CAUSE OF ACTION

## DECLARATORY RELIEF

298.   Plaintiff re-alleges all preceding paragraphs in their entirety.

299.   An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove regarding Plaintiff's respective rights and duties in the subject note and security instrument.  Plaintiff requests a judicial determination of the rights, obligations and interest of the parties regarding the subject property, and such determination is necessary and appropriate under the circumstances so that all parties may ascertain and know their rights, obligations and interests regarding subject property.

300.   Plaintiff requests the Court to make certain declarations relating to Defendants' standing to enforce the Deed of Trust and Defendants' rights and conduct in connection with the Deed of Trust which falls within NRS 30.040(1).

301.   Plaintiff should be the equitable owner of the Subject Property.

302.   Plaintiff seeks to quiet title as of the date of the filing of this Complaint pursuant to NRS 30.030(1).  Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants be

declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that Defendants answer herein, and that upon a final hearing, Plaintiff be awarded judgment:

•   Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties;

•   Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject property in Plaintiff and against Defendants and all claiming by, through or under them;

•   A refund of any wrongfully or improperly collected fees and payments from Defendants to which it had no right;

•   Pre- and post-judgment interest at the maximum rate allowed by law;

•   Attorney's fees and costs;

•   Monetary relief over $100,000 but not more than $2,000,000,00; and

•   Such other and further relief at law and/or in equity to which Plaintiff may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.

Dated: April 28, 2017.

Victoria Giampa
1848 Wellington Ct
Henderson, NV 89014

1
2
## **VERIFICATION**

3    I, Victoria Giampa, *In Pro Se*, the Plaintiff in the above entitled matter has personal

4  knowledge to testify to the matters stated therein.   I have read the facts and allegations and

5  declare under penalty of perjury in and for the State of Nevada that the above is true and

6  correct to the best of my knowledge.

7
8
9
10                                          Victoria Giampa
11                                          1848 Wellington Ct.
                                            Henderson, NV 89014
12                                          (702) 434-9027
                                            superjanedoe@yahoo.com
13
14    On the __28__ day of __April__ , Victoria Giampa, known to me appeared

15  before me and executed the above document.

16
17    NOTARY
18
19    My Commission expires on __02/02/2021__ .

20
21 
JAZLYN M. AVILA
Notary Public - State of Nevada
County of Clark
22                                          APPT. NO. 17-1312-1
My App. Expires Feb. 2, 2021
23
24
25
                                                              73

# EXHIBITS

Exhibit 1:    October 15, 2009 - Notice from BAC Home Loans Servicing of
              Lender-Placed Insurance

Exhibit 2:    December 23, 2009 – Cancellation of Lender-Placed Insurance

Exhibit 3:    March 31, 2016 – Certificate of Non-Foreclosure

Exhibit 4:    State of Nevada Attorney General's Complaint against Countrywide,
              Bank of America, et al, for Violations of the Deceptive Trade Practices
              Act

Exhibit 5:    Note

Exhibit 6:    November 6, 2006 - Deed of Trust

Exhibit 7:    Certified Forensic Audit and Affidavit by Michael Carrigan

Exhibit 8:    November 22, 2006 – Letter from MidFirst –
              Loan sold to Countrywide

Exhibit 9:    December 5, 2006.  Notice from Midfirst –
              Servicing of Loan assigned, sold or transferred from Midfirst Bank to
              Countrywide, effective 1/1/07

Exhibit 10:   December 27, 2010 –
              ReconTrust Company, N.A., acting in its capacity as agent for the
              beneficiary is attempting to college a deb for BAC Home Loans
              Servicing, LP

Exhibit 11:   January 5, 2011 – Reinstatement Calculation
              Net Total Due: $8,839.58

Exhibit 12:   February 11, 2011 – Bank of America Check No. 0004435963, in the
              amount of $1,548.81 for Escrow Overages

Exhibit 13:   June 17, 2011 – Bank of America – written admission of failing to
              give Plaintiff advance notice of pricing monthly fee change

Exhibit 14:   November 6, 2006 Note Endorsement Allonge signed by Natalie D.
              Jones, Vice President, Countrywide

Exhibit 15:   January 22, 2016, State of Nevada, Foreclosure Mediation Program

              Notice to Appear

Exhibit 16:   May 15, 2016 letter from Plaintiff to Midfirst - Request for bank's
              copy of Assignment of Mortgage Deed of Trust and Exhibits