BRIGETTE E. FOLEY, ESQ.
Nevada Bar No. 12965
WOLFE & WYMAN LLP
6757 Spencer Street
Las Vegas, NV  89119
Telephone: (702) 476-0100
Facsimile: (702) 476-0101
befoley@wolfewyman.com
*Attorneys for Defendants GREEN TREE SERVICING, LLC;*
*DITECH FINANCIAL, LLC; and MORTGAGE ELECTRONIC*
*REGISTRATION SYSTEM,("MERS")*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| VICTORIA GIAMPA,<br><br>             Plaintiff,<br><br>    v.<br><br>MIDFIRST BANK; FANNIE MAE, FANNIE MAE AS TRUSTEE FOR SECURITIZED TRUST, FANNIE MAE REMIC PASS-THROUGH CERTIFICATES 2006-123 TRUST; COUNTRYWIDE SERVICING CORP., BANK OF AMERICA CORPORATION; BANK OF AMERICA.N.A., BAC HOME LOANS SERVICING, LP; RECONTRUST COMPANY, N.A.; GREEN TREE SERVICING, LLC; DITECH FINANCIAL, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEM,("MERS"); NATIONAL DEFAULT SERVICING CORPORATION; AND DOES 1 THROUGH 100 INCLUSIVE, et al.,<br><br>             Defendants. | Case No.:      2:17-cv-01208-MMD-CWH<br><br>**DEFENDANTS GREEN TREE SERVICING LLC, DITECH FINANCIAL LLC, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS")'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Defendants   GREEN   TREE   SERVICING   LLC[1],   DITECH   FINANCIAL   LLC   and

MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS")[2], by and through their counsel

of record, BRIGETTE E. FOLEY, ESQ. of the law firm of WOLFE & WYMAN LLP, move to dismiss

the Complaint on the grounds that the Complaint does not meet the pleading standards set forth in

---

[1] Green Tree Servicing LLC's name was changed to Ditech Financial LLC prior to the initiation of this litigation. Defendants will respond and appear on behalf of both named Defendants as Ditech Financial LLC, which is the only company now existing.

[2] The proper entity name for this party is Mortgage Electronic Registration Systems, Inc.

2875727.1

FRCP 8(a) and FRCP 9(b), and Plaintiff fails to state a claim upon which relief may be granted as set forth in FRCP 12(b)(6), together with any additional grounds stated in the moving memorandum.

The motion to dismiss is based on this notice of hearing, the supporting memorandum of points and authorities, all judicially noticed matters, all pleadings and papers on file in this action, on the reply, if any, that may be filed with the Court, and on any and such further oral and documentary evidence as may be presented at the hearing on this matter.

DATED:  October 20, 2017                    WOLFE & WYMAN LLP

*/s/ Brigette E. Foley, Esq.*
BRIGETTE E. FOLEY, ESQ.
Nevada Bar No. 12965
6757 Spencer Street
Las Vegas, NV  89119
*Attorneys for Defendants GREEN TREE SERVICING, LLC;DITECH FINANCIAL, LLC; and MORTGAGE ELECTRONIC REGISTRATION SYSTEM,("MERS")*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff, Victoria Giampa ("Ms. Giampa") initiated this action on April 28, 2017, by filing a convoluted and unintelligible 73-page Complaint against Defendants wherein she seeks equitable, monetary and injunctive relief.  *See* Pl.'s Compl., Apr. 28, 2017, ECF No. 1.  Plaintiff lists the following causes of action in her 73-page Complaint:

1.  Violation of NRS 107.086(4)/ lack of standing/ statutorily defective foreclosure (ECF No. 1 at 39-45);

2.  "Fraud in Concealment" against MidFirst Bank (*Id*. at 45-47);

3.  "Fraud in Inducement", presumably against all Defendants (*Id*. at 47-49);

4.  RICO Violations, presumably against all Defendants (*Id*. at 49-57);

5.  Fair Debt Collection Practices Act Violations, presumably against all Defendants (*Id*. at 57-58);

6.   "Unconscionable Contract: against MidFirst Bank and Fannie Mae (*Id*. at 58-59);

7.  Breach of Contract against MidFirst Bank and MERS (*Id*. at 59-60);

2875727.1

2

8.      Breach of Fiduciary Duty (*Id*. at 60-61);

9.      Violations of the Nevada Deceptive Trade Practices Act (*Id*. at 61-62);

10.     "Falsification", presumably against all Defendants (*Id*. at 62-63);

11.     Civil Conspiracy, presumably against all Defendants (*Id*. at 63-64);

12.     Quiet Title against all Defendants (*Id*. at 65-67);

13.     Slander of Title against all Defendants (*Id*. at 67-70);

14.     Temporary Restraining Order and Request for Injunctive Relief to prevent foreclosure sale, presumably against all Defendants (*Id*. at 70-71);

15.     Declaratory Relief requesting judicial determination of all parties' rights and duties with respect to the subject Note and Deed of Trust (*Id*. at 71-72);

Plaintiff does not dispute that she defaulted on the subject mortgage loan in her Complaint or in any of her responses to Co-Defendants' Motions to Dismiss. Rather, Plaintiff's Complaint is riddled with unsupported allegations of fraud, collusion, and civil conspiracy among the original lender, loan servicers, current and former owners of the mortgage loan, and current and former record beneficiaries of the Deed of Trust, in a thinly-veiled attempt to detract from the true factual circumstances – that Plaintiff has been in default on the subject mortgage loan for several years now – in an effort to delay or completely halt the *proper* ongoing non-judicial foreclosure proceedings under the Deed of Trust.

As explained in Co-Defendants Motion to Dismiss and Joinder, ECF Nos. 45 and 54, as well as the Defendants' Responses to Plaintiff's Emergency Motion for TRO and preliminary injunction, ECF Nos. 11, 12, 27 and 34,[3] Plaintiff has failed to state any claims for relief against Defendants, and therefore dismissal of her Complaint in its entirety is necessary and proper.  Further, even when viewing the facts in the light most favorable to Plaintiff, it is clear that she will be unable to remedy the numerous defects in her Complaint by amendment.  Therefore, Defendants further request the Court grant the instant motion to dismiss <u>with</u> prejudice.

## STATEMENT OF RELEVANT FACTS

1.      On November 6, 2006, Ms. Giampa executed a Deed of Trust with MidFirst Bank, and against the real property at issue, commonly known as 1848 Wellington Court, Henderson, NV

---

[3] Movants incorporate the factual and legal allegation set forth in ECF Nos. 27, 34, 45 and 54 into the instant motion.

2875727.1

89014, to secure repayment of a mortgage loan Ms. Giampa obtained from MidFirst Bank in the original amount of $358,500.00. *See* Nov. 2006 DOT, recorded with the Clark County Recorder's Office on November 20, 2011 as Instrument No. 20061120-0000614; attached as Exhibit A to BANA & FNMA's Mot. to Dismiss, Sept. 14, 2017, ECF No. 45-1 at pp. 2-20. The Nov. 2006 DOT lists Ms. Giampa as the borrower, and MidFirst Bank as the Lender and beneficiary of record, and it was drafted and recorded on a "NEVADA – Single Family – FNMA/FHLMC UNIFORM INSTRUMENT." *Id.*

2.     The Nov. 2006 DOT also specifically references the Promissory Note that Ms. Giampa also executed on November 6, 2006, which memorializes material terms of the mortgage loan, including the repayment amount and timeframe. *Id.*; *see also* Nov. 6, 2006, Promissory Note, attached as Exhibit 1 to Giampa's Compl., ECF No. 1-1 at pp. 57-59. An Endorsement Allonge to the Note reflects that the Note was endorsed from Midfirst Bank to Countrywide Bank, N.A.; it was subsequently endorsed to Countrywide Home Loans, Inc. from Countrywide Bank, N.A.; and later, Countrywide Home Loans, Inc. executed a blank endorsement, which rendered the Note payable to bearer, and allowed for it to be negotiated by possession alone. NRS 104.3205(2). *See* Endorsement Allonge to the Nov. 6, 2006, Promissory Note, attached as Exhibit 14 to Giampa's Compl., ECF No. 1-2 at pg. 79. An executed copy of the Note and corresponding Endorsement Allonge is attached hereto as **Exhibit A**.

3.     The Nov. 2006 DOT states that "[t]he Note or a partial interest in the Note (together with this Security Interest) can be sold one or more times without prior notice to the Borrower." ECF No. 45-1 at pg. 12. The Nov. 2006 DOT also states that the property will be reconveyed, and "this Security Instrument and all notes evidencing debt secured by this Security Instrument" shall be surrendered. *Id.* at pg. 14.

4.     On January 1, 2007, Countrywide Home Loans, Inc. assumed the servicing responsibilities for the mortgage loan from MidFirst Bank. *See* ECF No. 102 at pp. 66-67.

5.     On January 4, 2007, MidFirst Bank executed an Assignment of the record beneficial interest in the Nov. 2006 DOT to MERS, which was recorded with the Clark County Recorder's Office on January 18, 2007, as Instrument No. 20070110-0000357. *See* ECF No. 45-2.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2875727.1

6.      On December 27, 2010:

a.      MERS executed an Assignment of the record beneficial interest in the Nov. 2006 DOT to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP ("BAC"), which was recorded with the Clark County Recorder's Office on December 29, 2010, as Instrument No. 201012290003426.  *See* ECF No. 45-3.

b.      BAC substituted RECONTRUST COMPANY, N.A. as the new Trustee under the Nov. 2006 DOT, which was recorded with the Clark County Recorder's Office on December 29, 2010, as Instrument No. 201012290003427.  Dec. 2010 Substitution is attached hereto as **Exhibit B.**

c.      RECONTRUST COMPANY, N.A. as the new Trustee under the Nov. 2006 DOT, executed a Notice of Default/Election to Sell Under Deed of Trust, which was recorded with the Clark County Recorder's Office on December 27, 2010, as Instrument No. 201012270000810.  Dec. 2010 Notice of Default is attached hereto as **Exhibit C.**  The Dec. 2010 Notice of Default states that Ms. Giampa breached and defaulted on her obligations under the Nov. 2006 DOT by failing to make payments on her mortgage loan since October 1, 2010.  *Id.*

7.      On January 26, 2011, RECONTRUST COMPANY, N.A. recorded a Rescission of the Dec. 2010 Notice of Default with the Clark County Recorder's Office as Instrument No. 201101260003216; attached hereto as **Exhibit D.**

8.      On July 1, 2011, Bank of America, N.A. assumed the servicing responsibilities for the subject mortgage loan from its subsidiary, BAC Home Loans Servicing, LP.  *See* Corresp. from BANA to Giampa, Feb. 8, 2011, attached hereto as **Exhibit E.**

9.      On December 1, 2011, Ditech Financial LLC f/k/a Green Tree Servicing LLC assumed the servicing responsibilities for the subject mortgage loan from Bank of America, N.A.  *See* Corresp. from Ditech to Giampa, Nov. 22, 2011, attached hereto as **Exhibit F.**

10.     On September 13, 2013, Ditech sent a letter to Ms. Giampa notifying her that her property was being referred to foreclosure in the near future because she had defaulted on her repayment obligations in the amount of $17,636.06.  *See* Corresp. from Ditech to Giampa, Sept. 13, 2013, attached hereto as **Exhibit G.**

2875727.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

11.     On July 8, 2015, Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP executed an Assignment of the record beneficial interest in the Nov. 2006 DOT to Green Tree Servicing LLC n/k/a Ditech Financial LLC, which was recorded with the Clark County Recorder's Office on July 31, 2015, as Instrument No. 201507310000322.  *See* ECF No. 45-4.

12.     On March 22, 2014, Ditech sent a letter to Ms. Giampa notifying her that her property was being referred to foreclosure in the near future because she had not made a full payment on her mortgage loan since September 7, 2013, and that her account has not been in good standing since December 1, 2011.  *See* Corresp. from Ditech to Giampa, March 22, 2014, attached hereto as **Exhibit H**.

13.     On September 21, 2015, Ditech recorded a Substitution of Trustee in favor of National Default Servicing Corporation under the Nov. 2006 DOT, which was recorded with the Clark County Recorder's Office as Instrument No. 20150921-0000144.  *See* ECF No. 45-5.

14.     On December 4, 2015, National Default Servicing Corporation recorded a Notice of Default and Election to Sell Under Deed of Trust after Ms. Giampa had failed to make payments on her mortgage loan since February 1, 2013.  Dec. 2015 Notice of Default, recorded with the Clark County Recorder's Office as Instrument No. 20151204-0002853, is attached hereto as **Exhibit I**.

15.     On March 23, 2016, Ms. Giampa and a representative from Ditech participated in a Foreclosure Mediation, as required by Nevada's Foreclosure Mediation Program that was in effect at that time.  *See* ECF No. 1-1 at pg. 7.  The Parties to the Mediation were unable to reach an agreement.  *Id.*

16.     On March 31, 2016, the Administrative Office of the Courts of Nevada issued a notice stating that the NV Foreclosure Mediation Program Mediator would not issue a Certificate of Foreclosure.  *See* ECF No. 1-1 at pg. 6.  The Notice further stated that the parties had 30 days from receipt of said notice to file a Petition for Judicial Review of the Mediator's determination with the District Court.  *Id.*

///

2875727.1

17.     On September 15, 2016, Ditech sent a letter to Ms. Giampa notifying her that her property was being referred to foreclosure in the near future because her account has not been paid in full since February 1, 2013.  *See* Corresp. from Ditech to Giampa, Sept. 15, 2016, attached hereto as **Exhibit J**.

18.     On August 31, 2016, National Default Servicing Corporation recorded a Rescission of the Dec. 2015 Notice of Default with the Clark County Recorder's Office as Instrument No. 20160831-0000158; attached hereto as **Exhibit K**.

19.     On March 1, 2017, National Default Servicing Corporation recorded a Notice of Default and Election to Sell Under Deed of Trust after Ms. Giampa had failed to make payments on her mortgage loan since March 1, 2013.  *See* ECF No. 45-7.

20.     On June 6, 2017, National Default Servicing Corporation recorded a Notice of Trustee's Sale against the property.  *See* ECF No. 45-8.

## LEGAL ARGUMENT

## I.     LEGAL STANDARD FOR DEFENDANTS' MOTION TO DISMISS.

A Fed. R. Civ. P. 12(b)(6) Motion to Dismiss "may only be granted when it is clear to the Court that "no relief could be granted under any set of facts that could be proven consistent with the allegations."  *FTC v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 U.S. Dist. LEXIS 80341, at *23 (D. Nev. June 6, 2013) (internal quotation omitted) (citing *McGlinchy v. Shell Chemical Co*., 845 F.2d 802, 810 (9th Cir. 1988)).  "Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory."  *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"A plaintiff's complaint <u>must</u> allege facts to state a claim for relief that is plausible on its face."  *FTC v. Johnson*, at *23 (emphasis added) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  "A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at *23-24 (quoting *Iqbal*, 556 U.S. at 677, 129 S. Ct. 1937).  "Although the Court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion."  *Id*.

7

2875727.1

1   (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

2   relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

3   cause of action will not do. Factual allegations must be enough to raise a right to relief above the

4   speculative level." *Id*. (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5   555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations and footnote omitted)). The Court does

6   not supply a central element of a claim that a plaintiff fails to plead. *Richards v. Harper*, 864 F.2d

7   85, 88 (9th Cir. 1988).

8           "Fraud claims must meet a heightened pleading standard under Federal Rule of Civil

9   Procedure 9(b), which requires a party to "state with particularity the circumstances constituting

10  fraud." *FTC v. Johnson*, at *24. "The plaintiff <u>must</u> plead with particularity the who, what, when,

11  where, and how of the misconduct charged." *Id*. (emphasis added) (quoting *Vess v. Ciba—Geigy*

12  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (internal quotation marks omitted)). "Rule 9(b)

13  demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be

14  specific enough to give defendants notice of the particular misconduct so that they can defend

15  against the charge and not just deny that they have done anything wrong." *Id*. *(*quoting *Vess*, 317

16  F.3d at 1108) (internal quotation marks omitted)).

17          The Court "may consider certain materials -- documents attached to the complaint,

18  documents incorporated by reference in the complaint, or matters of judicial notice -- without

19  converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*,

20  342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted). "Certain written instruments attached

21  to pleadings may be considered part of the pleading." *Id*., *see also* Fed. R. Civ. P. 10(c). "Even if a

22  document is not attached to a complaint, it may be incorporated by reference into a complaint if the

23  plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."

24  *Id*. (internal citations omitted). *See Van Buskirk*, 284 F.3d at 980; *Branch v. Tunnell*, 14 F.3d 449,

25  453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d

26  1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th

27  Cir. 1993). "The defendant may offer such a document, and the district court may treat such a

28  document as part of the complaint, and thus may assume that its contents are true for purposes of a

1    motion to dismiss under Rule 12(b)(6)." *Id.* (internal citations omitted).  This prevents plaintiffs

2    from "deliberately omitting references to documents upon which their claims are based." *Parrino v.*

3    *FHP, Inc.* 146 F.3d 699, 705-706 (9th Cir. 1998).

4    **II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY BECAUSE IT WHOLLY FAILS TO STATE ANY CLAIMS FOR RELIEF.[4]**

5
6    **A.    The Complaint Must Be Dismissed Because Plaintiff Fails To Meet The Threshold Pleading Requirements Of Rule 8(a).**

7    Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing

8    that the pleader is entitled to relief." *See Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (2009).  Under notice

9    pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and

10   the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  While Rule 8(a) does not require detailed

11   factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me

12   accusation." *Iqbal*, 129 S.Ct. at 1949.  A pleading is insufficient if it offers mere "labels and

13   conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at

14   555; *see also Iqbal*, 129 S.Ct. at 1950.

15   The instant Complaint clearly fails to meet the standard articulated in Rule 8(a).  Throughout

16   her 72-page Complaint Plaintiff refers to the defendants collectively and interchangeably, consistently

17   failing to distinguish amongst the individual defendants in any meaningful way.  Plaintiff asserts

18   grouped allegations against "[d]efendants" (and at times "defendant") without pleading any indication

19   as to which of the defendants she refers.  As the Complaint falls woefully short of the requirements of

20   Rule 8(a), the entire Complaint should be dismissed as against MERS and Ditech.

21
22   **B.    Plaintiff "Claim" for "Defendants' Lack of Standing/ NRS 107.086(4)/ Statutorily Defective Foreclosure"**

23   Plaintiff's first cause of action, entitled "Defendants' Lack of Standing/ NRS 107.086(4)/

24   Statutorily Defective Foreclosure", appears to be pled as a "wrongful foreclosure" claim.  In order to

25   pursue a wrongful foreclosure claim, Plaintiff must "establish that at the time the power of sale was

26
27
28

---

[4] Plaintiff's "Fraud in Concealment", Breach of Contract, Breach of Fiduciary Duty, and Violations of the Nevada Deceptive Trade Practices Act claims are not alleged against Ditech or MERS and therefore need not been addressed in this Motion.

9

1    exercised or the foreclosure occurred, **no breach of condition or failure of performance existed**

2    **on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise**

3    **of the power of sale**." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304, 662 P.2d 610,

4    623 (1983) (emphasis added).  Here, Plaintiff alleges that Defendants violated provisions of

5    Nevada's non-judicial foreclosure statutes, specifically by failing to comply with NRS 107.080 (Pl.'s

6    Compl. at ¶ 151), as well as Defendants' alleged falsification of documents and "improper transfer

7    of interests" (*Id.* at ¶ 149), which Plaintiff claims Defendants utilized to improperly move forward

8    with foreclosure and seize Plaintiff's property.  (*Id.* at ¶ 149).  Specifically, Plaintiff requests that

9    "the Trustee's Sale … be enjoined and barred until such time as Defendants comply with NRS

10   107.080," *Id.* at ¶ 151.  Because the only Notice of Trustee's Sale to ever be recorded against the

11   property since Plaintiff has been the homeowner is the June 6, 2017, Notice of Trustee's Sale that

12   was recorded by National Default Servicing Corporation (*see* ECF No. 45- 8), Plaintiff's first cause

13   of action must be referring to the ongoing non-judicial foreclosure proceedings that were

14   commenced on March 1 2017, when National Default Servicing Corporation recorded a Notice of

15   Default and Election to Sell Under the Deed of Trust.  *See* ECF No. 45-7.

16          Plaintiff's "Lack of Standing/ NRS 107.086(4)/ Statutorily Defective Foreclosure" must be

17   dismissed against Ditech and MERS because Plaintiff has been in default on her mortgage loan

18   obligations for several years, (*see* **Exhibit I**), a fact that Plaintiff does not dispute, and even alludes

19   to numerous times throughout her Complaint.  In addition, the ongoing foreclosure proceedings are

20   proper and compliant with NRS chapter 107.  *See* Ditech and MERS' Response to Pl.'s Emergency

21   Motions for TRO and Preliminary Injunction, Sept. 1, 2017, ECF No. 34, which is incorporated into

22   this Motion.

23          Furthermore, Plaintiff's "Lack of Standing/ NRS 107.086(4)/ Statutorily Defective

24   Foreclosure" must not proceed against MERS, which has no involvement in the ongoing non-judicial

25   foreclosure proceedings, and in fact, has not had any interest in the subject property or mortgage

26   loan since December 29, 2010, when MERS' Assignment of the record beneficial interest in the

27   Nov. 2006 DOT to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP

28   ("BAC"), was recorded with the Clark County Recorder's Office.  *See* ECF No. 45-3.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2875727.1

### C.   Plaintiff's Third "Cause of Action" for "Fraud in the Inducement"

To establish fraud in the inducement, Plaintiff must prove the following elements by clear and convincing evidence: (1) "the defendants made a *false representation* to [her], *with knowledge or belief* that the representation was *false* or without a sufficient basis for making the representation." *Blanchard v. Blanchard*, 108 Nev. 908, 911, 839 P.2d 1320, 1322 (1992) (emphasis in original) (internal citations omitted); (2) the defendants "*intended to induce the plaintiff to act or refrain from acting* on the representation, and that the plaintiff *justifiably relied* on the representation." *Id*.; and (3) that Plaintiff was "*damaged* as a result of [her] reliance." *Id*. To establish justifiable reliance, plaintiff must show that the false representation *played a material and substantial part in leading the plaintiff to adopt [her] particular course.*" *Id*. If Plaintiff was "unaware of [a false representation] at the time that she acted, or it is clear that she was not in any way influenced by it, and would have done the same thing without it for other reasons, her loss is not attributed to the defendant." *Id*. (emphasis in original) (internal citations omitted).

#### 1.   Plaintiff failed to plead her fraud claim with particularity, as required by Fed. R. Civ. P. 9(b).

At the threshold, this claim should be dismissed because Plaintiff failed to plead it with the particularity, as required by Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to ensure that defendants accused of fraud have adequate notice of what they are allege to have done so that they may defend against the accusations. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir.1995). Thus, a district court may dismiss the complaint or claim when the entire complaint or an entire claim within a complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b). *Vess v. CIBA-Geigy Corp. USA* 317 F.3d 1097, 1107 (9th Cir. 2003). When the defendant is a corporation, the fraud claim must allege specific names of the persons who made the misrepresentation, their authority to speak for the corporation, to whom they spoke to, what they said or wrote, and when it was said or written. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861, 862-63 (1991).

Plaintiff's third cause of action, entitled "fraud in the inducement", is based upon bare, conclusory allegations that Defendants "misrepresented that they are the "holder and owner" of the

2875727.1

Tangible Note and the beneficiary of the Deed of Trust" (Pl.'s Compl. at ¶ 178) "with the intent to … induce Plaintiff to submit to the foreclosure" (*Id.* at ¶ 180).  Here, Plaintiff failed to plead the required "who, what, when, where, and how" of the alleged fraudulent conduct against MERS and Ditech (*see* Pl.'s Compl. at ¶¶ 176-183), thus necessitating dismissal as to MERS and Ditech.

### 2.   Plaintiff's fraud claim is time-barred.

In Nevada, "an action for relief on the ground of fraud or mistake" must be brought within 3 years, "but the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake."  NRS 11.190(3)(d).  Again, because MERS has not had any interest in the property or mortgage loan since December 29, 2010, Plaintiff's fraud claims against MERS, even if properly pled, are time-barred.  Further, Ditech has been servicing the subject mortgage loan since December 1, 2011, (*see* Corresp. from Ditech to Giampa, Nov. 22, 2011, attached hereto as **Exhibit F**), and had advised Ms. Giampa as early as September 13, 2013, that her loan was in default and that her property would be referred to foreclosure if she did not reinstate her loan.  *See* Corresp. from Ditech to Giampa, Sept. 13, 2013, attached hereto as **Exhibit G**.  Accordingly, Plaintiff's fraud in inducement claim against Ditech is also time-barred.

### D.   Plaintiff's Fourth "Cause of Action" for Civil RICO Violations.

#### 1.   Plaintiff has not set forth sufficient allegations to support her Civil RICO Claims.

To state a claim for RICO, a "[p]laintiff must show (1) a pattern of racketeering activity, (2) the existence of an enterprise engaged in or effecting interstate or foreign commerce, (3) a nexus between the pattern of racketeering activity and the enterprise, and (4) an injury to his business or property by reason of the above."  *Fedima S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 496, 1055 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Living Designs, Inc. v. E.I. Dupont de Nemorus & Co.*, 431 F.3d 353, 361. (9th Cir. 2005).  "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code.  *See* 18 U.S.C. § 1961.  To state a RICO claim, "it is not enough that the defendant engaged in a racketeering activity; rather, the plaintiff must establish a pattern of racketeering activity."  *Gervas v. Superior Court* 31 Cal.App.4th 1218, 1232 (1995).  Notably, "a

12

2875727.1

1    pattern requires at least two predicate acts of racketeering activity … in fact, even two of anything

2    rarely forms a pattern." *Id.* Furthermore, a plaintiff must plead his RICO claim with a clear factual

3    predicate, as the court is not "obligated to construct a cause of action from allegations and a

4    complaint filed by a party who was unwilling or unable to plead the cause of action himself." *Glenn*

5    *v. First National Bank in Grand Junction* 868 F. 2d 368 (10th Cir. 1989). Moreover, RICO claims

6    are subject to careful scrutiny under a motion to dismiss: [T]he complaint must be anchored in a bed

7    of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's

8    sufficiency has not obligation to take matters on blind faith; "despite the highly deferential reading

9    which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions,

10   periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Miranda v.*

11   *Ponce Federal Bank* 943 F. 2d 41, 44 (1st Cir. 1991) (internal citations omitted). The Ninth Circuit

12   has likewise held that the particularity requirements of Rule 9(b) apply to RICO claims. *Moore v.*

13   *Kayport Package Exp., Inc.* 885 F. 2d 531, 541 (9th Cir. 1989). "Thus, allegations of fraud under

14   section 1962(c) must identify the time, place and manner of each fraud plus the role of each

15   defendant in each scheme." *Walters v. Fidelity Mortgage of Cal.* 2010 WL 3069341, at *20 (E.D.

16   Cal 2010) (*quoting Schreiber Distrib. Co. v. Serv-Well Furniture* 806 F. 2d 1391 (9th Cir. 1986);

17   *Alan Neuman Productions, Inc. v.* Albright 862 F.2d 1388, 1391 (9th Cir. 1989) (To establish a

18   violation of the "predicate acts" that form the basis of a RICO violation, a plaintiff must specify the

19   time, place, and nature of the alleged acts; the failure to do so is a fatal defect.)).

20        Here, the alleged "enterprise" and specific conduct which apparently constitutes

21   "racketeering activity" appears to be Defendants' recording of Assignments of the record beneficial

22   interest in the Deed of Trust with the Clark County Recorder's Office, which Plaintiff claims was

23   done with the specific intent to defraud her. *See* Pl.'s Compl. at ¶ 192.  Plaintiff alleges "on

24   information and belief" that certain alleged employees of Defendants "communicated with each

25   other, and with the Clark County recorder via mail, telephone, wire, and electronic mail

26   communications within a ten-year period immediately preceding the date of this Complaint with the

27   specific intent to defraud Plaintiff." *Id.* at ¶ 197.  However, these allegations are confusing,

28   conclusory, and fail to indicate how the alleged conduct of mailing foreclosure documents

13

1   constitutes a "pattern of racketeering activity." Further, because Plaintiff's RICO claims are

2   premised on allegations of fraud, she must specifically identify the time, place and manner of each

3   fraud as well as the role of each defendant in each scheme, which she wholly fails to do. Therefore,

4   Plaintiff's civil RICO claims must be dismissed.

5             **2.      Plaintiff's RICO claims are time-barred.**

6         A civil RICO claim must be brought within 4 years of the alleged conduct. *Scott v. Boos*,

7   215 F.3d 940, 950 (9th Cir. 2000); *see also Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S.

8   143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987). Because it has been over 7 years since MERS

9   had any interest in the subject property or loan, Plaintiff's RICO claims against MERS are time-

10  barred.

11        **E.      Plaintiff's Fifth "Cause of Action" for Fair Debt Collection Practices Act**
12                **Violations.**

13        The FDCPA is "a broad remedial statute designed to eliminate abusive debt collection

14  practices by debt collectors, to insure that those debt collectors who refrain from using abusive

15  collection practices are not competitively disadvantaged, and to promote consistent State action to

16  protect consumers against debt collection abuses." *Preston v. Clark Cty. Collection Serv., LLC*, No.

17  2:14-CV-00021-APG-PAL, 2014 U.S. Dist. LEXIS 169032, at *8 (D. Nev. Dec. 4, 2014) (citing

18  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (quoting 15 U.S.C. §

19  1692e)). 15 U.S.C. § 1692e prohibits debt collectors from using any "false, deceptive, or misleading

20  representation or means in connection with the collection of any debt", and contains "a non-

21  exhaustive list of prohibited conduct, including the use of any false representation or deceptive

22  means to collect or attempt to collect any debt. . . ." *Id.* § 1692e(10). Section 1692f "prohibits the use

23  of unfair or unconscionable means to collect or attempt to collect any debt."

24             **1.      Plaintiff has not set forth sufficient allegations to support her claims of**
25                **FDCPA Violations.**

26        To determine whether a debt collector's conduct violates the FDCPA, the Court must

27  "engage in an objective analysis that takes into account whether the least sophisticated debtor would

28  likely be misled by a communication." *Preston v. Clark Cty. Collection Serv., LLC*, No. 2:14-CV-

2875727.1

1   00021-APG-PAL, 2014 U.S. Dist. LEXIS 169032, at *8 (citing *Donohue v. Quick Collect, Inc.*, 592

2   F.3d 1027, 1030 (9th Cir. 2010) (quotation omitted)). This standard is "designed to protect

3   consumers of below average sophistication or intelligence, or those who are uninformed or naïve,

4   particularly when those individuals are targeted by debt collectors." *Id.* (internal citation omitted).

5   "However, the standard preserv[es] a quotient of reasonableness and presumes a basic level of

6   understanding and willingness to read with care." *Id.* (alterations in original) (citations and

7   quotation omitted). "Debt collectors are not liable for bizarre, idiosyncratic, or peculiar

8   misinterpretations." *Id.* (internal quotation marks and citations omitted). Finally, "FDCPA does not

9   require the debt collector to advise the consumer of all statutory rights or requirements." *Id*.

   a.      **Plaintiff has not provided any factual allegations against MERS.**

10

11  Plaintiff does not allege any facts in her complaint that MERS engaged in any FDCPA

12  violations.  Therefore, Plaintiff's FDCPA claims against MERS must be dismissed with prejudice.

   b.      **Plaintiff's FDCPA claims against Ditech cannot proceed because**
13          **they are based upon Plaintiff's improper conclusion that Ditech**
14          **lacks authority to collect on the mortgage.**

15  Nevada law recognizes the validity of Ditech's role as servicer in mortgage loan transactions,

16  such as the one at issue in the instant action.  The Restatement (Third) of Property: Mortgages § 5.4

17  cmt. c describes the typical arrangement between investors in mortgages and their servicers:

18          Institutional purchasers of loans in the secondary mortgage market often
19          designate a third party, not the originating mortgagee, to collect payments on
            and otherwise "service" the loan for the investor.  In such cases the promissory
20          note is typically transferred to the purchaser, but an assignment of the mortgage
            from the originating mortgagee *to the servicer* may be executed and recorded.
21          This assignment is convenient because it facilitates actions that the servicer
            might take, such as releasing the mortgage, at the instruction of the purchaser.
22          The servicer may or may not execute a further unrecorded assignment of the
            mortgage to the purchaser.

23  (Emphasis added).  This arrangement preserves the investor's ownership interest:

24          *It is clear in this situation that the owner of both the note and mortgage is the*
25          *investor and not the servicer.*  This follows from the express agreement to this
            effect that exists among the parties involved.  The same result would be reached
26          if the note and mortgage were originally transferred to the institutional
            purchaser, who thereafter designated another party as servicer and executed and
27          recorded a mortgage assignment to that party for convenience while retaining
            the promissory note.

28



2875727.1

1   *Id.* (emphasis added).  Thus, the Restatement acknowledges that the assignment of a deed of trust to

2   a servicer does not alter the fact that the purchaser of the loan remains the owner of the note and

3   deed of trust.  The Nevada Supreme Court reaffirmed that it adopted the entirety of the Restatement

4   approach, and specifically cited to the sections cited above in *In re Montierth*, 131 Nev. Adv. Op.

5   55, 354 P.3d 648, 650-51 (2015).  *Montierth* explained that where the record beneficiary of the deed

6   of trust has contractual or agency authority to foreclose on the note owner's behalf, the note owner

7   maintains a property interest in the collateral.  *Id.*[5]

8           The *Montierth* court applied the Restatement to a situation where MERS, as nominee for the

9   original lender and its successors and assigns, served as record beneficiary of a deed of trust, while

10  Deutsche Bank had acquired the related promissory note from the original lender.  *Id.* at 649.  The

11  Nevada Supreme Court concluded that the relationship between MERS and Deutsche Bank, wherein

12  MERS had authority to foreclose on Deutsche Bank's behalf, ensured that Deutsche Bank remained

13  a "secured creditor" with a "fully-secured, first priority deed" that could be enforced.  *Id.* at 650-51.

14  Since *Montierth*, additional Nevada courts have recognized that when the entity appearing as record

15  beneficiary of a deed of trust is MERS or a servicer in a contractual relationship with the loan owner,

16  the loan owner retains a secured property interest under Nevada law.  *See, e.g.*, *Berezovsky*, 2015

17  WL 8780198, at *3; *G & P Inv.*, 2016 WL 4370055; *Koronik*, 2016 WL 7493961, at *1.

18          The Restatement approach is consistent with Nevada's adoption of Uniform Commercial

19  Code Article 3, which provides that "[a] person may be a person entitled to enforce [a promissory

20  note] even though the person is not the owner of the [that note]."  NRS 104.3301.  A "person entitled

21  to enforce" a note may be a "holder" of the note or even a "nonholder in possession of the [note]

22  who has the rights of the holder."  *Id.*  Accordingly, "the status of holder merely pertains to one who

23  may enforce the debt and is a separate concept from that of ownership."  *Thomas v. BAC Home*

24  *Loans Servicing, LP*, No. 56587, 2011 WL 6743044, at *3 n.9 (Nev. Dec. 20, 2011).  That is because

25

---

26  [5] *Montierth* clarified the earlier Nevada Supreme Court decision in *Edelstein v. Bank of New York Mellon*, 128 Nev. Adv.
    Op. 48, 286 P.3d 249, 257-58 (2012), which had discussed a general rule about what happens when a note and deed of
27  trust are split without needing to consider the exception when a contractual or agency relationship exists between the
    entity who owns the loan and the entity who serves as record beneficiary of the deed of trust.  *Montierth*, 131 Nev. Adv.
28  Op. 55, 354 P.3d at 651 ("Because it was not pertinent to [the Nevada Supreme Court's] analysis in *Edelstein*, [the court]
    did not include the exceptions provided in the Restatement.").

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1   "[o]wnership rights in instruments may be determined by principles of the law of property . . . which

2   do not depend upon whether the instrument was transferred."  UCC § 3-203 cmt. 1.  For that reason,

3   a transfer of a note has no bearing on ownership, but instead "vests in the transferee any right of the

4   transferor to enforce the instrument."  NRS 104.3203.[6]

5         Plaintiff's FDCPA violation claims against Ditech seem to stem from a number of

6   communications between Ditech and Ms. Giampa between December 2011 through March 24, 2016,

7   regarding "loss mitigation options" and Plaintiff's inability to obtain a loan modification.  Pl.'s

8   Compl. at ¶¶ 94-98, 111, 120.  However, lenders and servicers are **not required to agree to a loan**

9   **modification**.  *See Hamilton v. Greenwich Investors XXVI, LLC* 195 Cal.App.4th 1602, 1617 (2011)

10  (emphasis added).  Therefore, Plaintiff cannot maintain an FDCPA claim against Ditech because she

11  was unable to obtain a loan modification.  Furthermore, Plaintiff does not allege any facts to support

12  her claim that Ditech committed FDCPA violations.  The basis for Plaintiff's FDCPA violation

13  claim against Ditech is her improper conclusion that Ditech attempted to collect on a debt to which it

14  was not entitled.  *See* Pl.'s Compl. at ¶ 120.  However, there are no factual allegations to suggest that

15  Ditech was not authorized to service Ms. Giampa's mortgage loan and collect payments on said

16  loan.  Indeed, the facts clearly reflect that Ditech undertook servicing responsibilities on the loan on

17  December 1, 2011 (*see* **Exhibits E** and **F**), and that Ditech has been the record beneficiary of the

18  Deed of Trust since July 8, 2015.  *See* ECF No. 45-4.  Here, Plaintiff's claims against Ditech are

19  based upon a misunderstanding of Ditech's role and the applicable law.  Plaintiff's conclusion that

20  Ditech lacks authority to collect on the subject mortgage loan is misguided and need not be

21  construed in her favor.  In fact, Ditech's authority as the mortgage loan servicer to collect on the

22  mortgage loan is well-recognized in Nevada.  Therefore, Plaintiff's FDCPA claims against Ditech

23  fail as a matter of law, and must be dismissed.

24  ///

25

26  _____

[6] Similarly, Uniform Commercial Code Article 9 provides that "[t]he attachment of a security interest in a right to

27  payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security, mortgage or other lien." NRS § 104.9203(7).  Thus, "a transferee of a mortgage note" such as Fannie Mae "whose property right in the note has attached also automatically *has an attached property right in*

28  *the mortgage* that secures the note."  Report of the Permanent Editorial Board for the UCC, Application of the UCC to Selected Issues Relating to Mortgage Notes at 14 (Nov. 14, 2011) (emphasis added).

2875727.1

**2.   Plaintiff's FDCPA claims are time-barred.**

An action to enforce civil liability created by the FDCPA (15 USCS §§ 1692 et seq.) must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k.  Because MERS has not had any interest in the property or loan since December 29, 2010, any claims against MERS for FDCPA violations are time-barred.

The last correspondence Plaintiff references from Ditech in support of her FDCPA claim was dated March 25, 2016.  *See* Pl.'s Compl. at ¶¶ 121-22.  Because that last correspondence was sent to Plaintiff more than a year before she filed her Complaint, Plaintiff's FDCPA violations claims against Ditech are time-barred.

**F.   Plaintiff's "Falsification" Claims are duplicative, and therefore must be dismissed.**

When analyzing a Plaintiff's complaint under a 12(b)(6) standard, the Court "look behind the form of the action[s] to the gravamen of [the] complaint[s] and the nature of the right[s] sued on." *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011).  Plaintiff's Falsification claim is not a recognizable, independent cause of action, but rather a restatement and re-characterization of her fraud, misrepresentation, RICO, and slander of title claims.  *See* Pl.'s Compl. at ¶¶ 255-257.

**G.   Plaintiff's "Civil Conspiracy" Claim.**

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983).  However, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.  *Id.*  Finally, because civil conspiracy is considered a tort, it is subject to Nevada's 2-year statute of limitations period.  NRS 11.190(4)(e).

Plaintiff's civil conspiracy claims fail because her allegations concern agents' and employees' alleged actions in their official capacities.  *See* Pl.'s Compl. at ¶¶ 258-62.  In addition,

18

2875727.1

1   Plaintiff's civil conspiracy claims are time-barred as to MERS and Ditech, for the reasons previously

2   outlined herein.

3   **H.   Plaintiff's "Quiet Title" Claim.**

4   For the reasons previously stated herein, Plaintiff's Quiet Title claims fail against MERS

5   because MERS has not had any interest in the Property or mortgage loan since December 2010.

6   Furthermore, Plaintiff's quiet title claims fail against Ditech because Nevada Law recognizes

7   Ditech's position as an authorized servicer and the propriety of its designation as the current record

8   beneficiary of the Deed of Trust. Plaintiff has not alleged any factual allegations to support a claim

9   that title should be quieted in her favor, and in fact, the public records reflect that the Deed of Trust

10  continues to encumber the property. Therefore, Plaintiff's quiet title claim must be dismissed.

11  **I.   Plaintiff's Slander of Title Claim.**

12  "The requisites to an action for slander of title are that the words spoken be false, that they be

13  maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of

14  their having been spoken." *Rowland v. Lepire*, 99 Nev. 308, 313, 662 P.2d 1332, 1335 (1983)

15  (internal citations omitted). "[T]o prove malice it must be shown that the defendant knew that the

16  statement was false or acted in reckless disregard of its truth or falsity." *Id*. "Where a defendant

17  has reasonable grounds for belief in his claim, he has not acted with malice." *Id*. Because slander of

18  title is considered a tort, it is subject to Nevada's 2-year statute of limitations period. NRS

19  11.190(4)(e).

20  Plaintiff's slander of title claims against Defendants are based upon the Assignments that

21  were recorded against the property, as well as the Notices of Default and the recent Notice of Sale

22  recorded against the property. *See* Pl.'s Compl. at ¶¶ 278-291. As previously discussed herein,

23  Plaintiff's slander of title claims against MERS and Ditech must be dismissed under the 12(b)(6)

24  standard because Nevada Law makes clear that MERS and Ditech were appropriately designated as

25  record beneficiaries of the Deed of Trust. Furthermore, because Plaintiff remains in default on her

26  loan obligations, the Court need not accept as true her legal conclusions that the Notices of Default

27  and Notice of Sale recorded against the property were slanderous. In addition, Plaintiff's claims as

28  to MERS are time-barred due to MERS not having an interest in the property or mortgage since

19

1  December 29, 2010.  Finally, for the reasons stated in Ditech and MERS' Response to Plaintiff's

2  Emergency Motions for TRO and Preliminary Injunction, ECF No. 34, Plaintiff's slander of title

3  claims against Ditech cannot be maintained.

4      **J.**    **Plaintiff's requests for injunctive relief and declaratory judgment.**

5      Because it is undisputed that MERS has not had an interest in the property or mortgage since

6  December 29, 2010, Plaintiff's claims for injunctive relief and declaratory judgment are inapplicable

7  as to MERS, and therefore should be dismissed with prejudice.

8      In addition, for the reasons stated in Ditech and MERS' Response to Plaintiff's Emergency

9  Motions for TRO and Preliminary Injunction, ECF No. 34, Plaintiff's injunctive relief claim against

10  Ditech cannot be maintained, and declaratory judgment is unnecessary.

11  **CONCLUSION**

12      Based upon the foregoing, the movants respectfully request that the Court dismiss all of Ms.

13  Giampa's claims against MERS and Ditech with prejudice and without leave to amend.

14      DATED:  October 20, 2017        WOLFE & WYMAN LLP

15                           */s/ Brigette E. Foley, Esq.*

16                           BRIGETTE E. FOLEY, ESQ.

17                           Nevada Bar No. 12965

18                           6757 Spencer Street
                         Las Vegas, NV  89119

19                           *Attorneys for Defendants GREEN TREE SERVICING, LLC;DITECH FINANCIAL, LLC; and MORTGAGE ELECTRONIC REGISTRATION SYSTEM,("MERS")*

20

21

22

23

24

25

26

27

28

2875727.1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 20, 2017, and pursuant to FRCP 5, I served via the CM/ECF electronic filing system, electronic mail, and/or deposited for mailing in the United States First Class Mail, a true and correct copy of the foregoing **DEFENDANTS GREEN TREE SERVICING LLC, DITECH FINANCIAL LLC, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS")'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**, postage prepaid and addressed to:

Victoria Giampa
1848 Wellington Court
Henderson, NV 89014
superjanedoe@yahoo.com
*Plaintiff Pro se*

Darren T. Brenner, Esq.
Jesse A. Ransom, Esq.
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Darren.brenner@akerman.com
Jesse.ransom@akerman.com
*Attorneys for Defendants for Bank of America, N.A.,*
*Countrywide Servicing Corp, Bank of America*
*Corporation, BAC Home Loans Servicing, Recontrust*
*Company N.A., Fannie Mae, Fannie Mae as Trustee*
*for Securitized Trust, Fannie Mae Remic Pass-Through*
*Certificates 2006-123 Trust; Mortgage Electronic Registration Systems (MERS)*

Kevin S. Soderstrom, Esq.
Gregory L. Wilde, Esq.
Tiffany & Bosco, P.A.
212 S. Jones Boulevard
Las Vegas, NV 89107
kss@tblaw.com
efilenv@tblaw.com
*Attorney for Defendants*
*National Default Servicing Corporation*

*/s/ Cheryl M. Klukas*
Cheryl M. Klukas
An employee of WOLFE & WYMAN LLP

2875727.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>INDEX OF EXHIBITS</u>

**Defendants Green Tree Servicing LLC, Ditech Financial LLC, And Mortgage Electronic Registration System ("MERS")'s Motion to Dismiss Plaintiff's Complaint**

**Exhibit A**:   An executed copy of the Nov. 6, 2006, Promissory Note and corresponding Endorsement Allonge

**Exhibit B**:   Substitution of Trustee to Recontrust Company, Recorded December 29, 2010

**Exhibit C**:   Notice of Default/Election to Sell Under Deed of Trust, Recorded December 27, 2010

**Exhibit D**:   Rescission of the Dec. 2010 Notice of Default, Recorded January 26, 2011

**Exhibit E**:   Corresp. from BANA to Giampa re: servicing transfer, Feb. 8, 2011

**Exhibit F**:   Corresp. from Ditech to Giampa re: servicing transfer, Nov. 22, 2011

**Exhibit G**:   Corresp. from Ditech to Giampa re: notice of default, Sept. 13, 2013

**Exhibit H**:   Corresp. from Ditech to Giampa re: notice of default, March 22, 2014

**Exhibit I**:   Notice of Default and Election to Sell Under Deed of Trust, Recorded December 4, 2015

**Exhibit J**:   Corresp. from Ditech to Giampa re: notice of default, Sept. 15, 2016

**Exhibit K**:   Rescission of the Dec. 2015 Notice of Default, Recorded August 31, 2016

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

w&w

2875727.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELLORS AT LAW

2875727.1